1  Leslie T. Gladstone, Esq.  (SBN 144615)
   Christin A. Batt, Esq.  (SBN 222584)
2  FINANCIAL LAW GROUP
   5656 La Jolla Blvd.
3  La Jolla, CA 92037
   Telephone:  (858) 454-9887
4  Facsimile:  (858) 454-9596
   E-mail:  ChristinB@flgsd.com
5
6  Attorneys for Leslie T. Gladstone, Chapter 7 Trustee

7              UNITED STATES BANKRUPTCY COURT

8              SOUTHERN DISTRICT OF CALIFORNIA

9

In re:                                    Case No.:  22-01836-MM7

L. ROBERT JELLINEK,                       **SUPPLEMENTAL DECLARATION OF
                                          LESLIE T. GLADSTONE IN SUPPORT
                                          OF TRUSTEE'S MOTION TO (1)
             Debtor.                      APPROVE AUCTION PROCEDURES;
                                          AND (2) SELL REAL PROPERTY
                                          PURSUANT TO 11 U.S.C. SECTION 363,
                                          FREE AND CLEAR OF LIENS,
                                          CLAIMS, AND INTERESTS**

                                          Date:        January 11, 2024
                                          Time:        10:00 a.m.
                                          Dept:        One (1)
                                          Honorable Margaret M. Mann

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

I, LESLIE T. GLADSTONE, declare:

       1.      I am the chapter 7 trustee for the bankruptcy estate of L. Robert Jellinek

("**Jellinek**").  All the information contained herein is within my personal knowledge, except for

those matters alleged on information and belief and as to those matters I believe them to be true.

If called as a witness, I could competently testify thereto.

       2.      I offer this Supplemental Declaration in support of my Motion to (1) Approve

Auction Procedures; and (2) Sell Real Property Pursuant to 11 U.S.C. Section 363, Free and

Clear of Liens, Claims, and Interests (the "**Motion**").

/ / /

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

3.     On January 11, 2024, the Court approved the auction procedures described in the Motion and an auction was held.

4.     At the conclusion of the auction, the Court approved Mustafa Amanatullah and Gulden Amanatullah as the Successful Bidder for a purchase price of $1,002,000.00.  A true and correct copy of the Overbid Agreement for the purchase of the Property by Mustafa Amanatullah and Gulden Amanatullah is attached hereto as Exhibit A and incorporated herein by reference.

5.     The Court also approved Alixandra Vallier and Matthew Vallier as the Back-Up Bidder for a purchase price of $1,000,000.00.  A true and correct copy of the Back-Up Agreement for the purchase of the Property by Alixandra Vallier and Matthew Vallier, solely in the event that the sale to Mustafa Amanatullah and Gulden Amanatullah does not close, is attached hereto as Exhibit B and incorporated herein by reference.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 11, 2024, at La Jolla, California.

   /s/ Leslie T. Gladstone
Leslie T. Gladstone

# Exhibit A

# Exhibit A

OVERBID AGREEMENT

Seller:        Leslie T. Gladstone, Chapter 7 Trustee for the Estate of L. Robert Jellinek, Bankruptcy Case No. 22-12836-MM7, pending in the United States Bankruptcy Court for the Southern District of California

Buyer:        *Mustafa and Gulden Amanatullah*_____ ("**Buyer**")

Property:    5814 Ranch View, Oceanside, CA 92057

This is an Overbid Agreement and counteroffer to the terms of the standard California Residential Purchase Agreement and Joint Escrow Instructions, including Buyer Contingency Removal No. One (collectively, the "**Offer**"), which Offer is attached hereto as <u>Exhibit A</u> and incorporated herein, for the property located at 5814 Ranch View, Oceanside, CA 92057 (the "**Property**").

The seller of the Property is Leslie T. Gladstone, Chapter 7 Trustee ("**Seller**") for the Estate of L. Robert Jellinek (the "**Bankruptcy Estate**"), Bankruptcy Case No. 22-12836-MM7, United States Bankruptcy Court for the Southern District of California (the "**Court**").

**Buyer acknowledges that the sale referred to herein, and any written modification to the terms set forth herein, is contingent upon the entry of a final order of the United States Bankruptcy Court approving such sale under the terms and conditions stated herein or as hereafter modified by mutual written agreement of the parties hereto. If Seller fails to obtain the final order of the Court, the monies received from Buyer shall be refunded to Buyer.**

Buyer and Seller accept all the terms and conditions in the Offer with the following changes, deletions and amendments.

1.    **PURCHASE PRICE**  (Paragraph 3 of Offer)

Subparagraph 3A of the Offer is modified as follows:  The total Purchase Price shall be _____ *One Million and Two Thousand*_____ and 00/100ths Dollars ($ *1,002,000* .00).

**Buyer's Initials:** *MA GA* **Seller's Initials:** *LG*

Subparagraphs 3E(1) and (2) are modified as follows:  A portion of the Purchase Price may be funded by a loan obtained by Buyer; provided, however, that Buyer's obligations under this Overbid Agreement are not contingent upon Buyer obtaining financing for the Purchase Price.  See Paragraph 4 below.

2.    **CLOSE OF ESCROW**  (Paragraph 3 of Offer)

Subparagraph 3B of the Offer is modified as follows:  Close of Escrow shall occur fifteen (15) days after entry of an Order by the Court approving the terms of this Overbid Agreement, or as soon as is reasonably possible thereafter.

Buyer's Initials *MA* ( *GA* )                 1                 Seller's Initials ( *LG* )

3. **INITIAL DEPOSIT** (Paragraph 3 of Offer)

Subparagraph 3D(1) of the Offer is modified to provide that the Initial Deposit Amount shall be $28,000.00, payable to the Estate of Jellinek, Leslie T. Gladstone, Trustee, and delivered to Seller by Noon Pacific Time on January 8, 2024. The amount set forth in subparagraph 3F of the Offer shall be adjusted accordingly.

4. **WAIVER OF ALL CONTINGENCIES** (Paragraph 3 of Offer)

Notwithstanding anything to the contrary in the Offer, this Overbid Agreement expressly includes Buyer Contingency Removal No. One, in which Buyer hereby removes any and all Buyer Contingencies.

5. **ITEMS INCLUDED AND EXCLUDED** (Paragraph 3 of Offer)

Subparagraphs 3P(1) and 3P(2) of the Offer are modified to provide that items included in the sale are all appliances on the Property as of November 30, 2023.

6. **ALLOCATION OF COSTS** (Paragraphs 3 and 10 of Offer)

Paragraphs 3 and 10 of the Offer are modified as follows:

(a) Subparagraph 10B(2)(B) is modified to provide that Seller shall provide to Buyer a copy of any applicable government-conducted or point-of-sale inspection report that is in her possession.

(b) Subparagraph 3Q(7) is modified to provide that Buyer and Seller shall pay escrow fee 50/50 and Escrow Holder shall be Ticor Title Company (Carolyn Church).

(c) Subparagraphs 3Q(12), 3Q(13), 3Q(14), 3Q(15), 3Q(16), and 3Q(17), if applicable, shall be paid by **Buyer.**

(d) Buyer acknowledges and understands that the Property is an asset of the bankruptcy estate. As a result, Seller's obligation to pay any sums or costs or to take any action no matter how defined or designated, is contingent upon approval by the Court of the terms of this transaction, and the close of escrow for the sale of the Property. A hearing may be required by the Court.

7. **OTHER TERMS** (Paragraph 3 of Offer)

Subparagraph 3R of the Offer is modified as follows:

(a) Seller accepts the Offer to purchase the Property and agrees to sell the Property subject to the conditions and provisions of this Overbid Agreement.

(b) Except as amended herein, the terms of the Offer shall continue in full force and effect. To the extent any provision of this Overbid Agreement is inconsistent with the terms of the Offer, this Overbid Agreement shall be deemed to supersede and replace the inconsistent provisions of the Offer.

Buyer's Initials _____ (____)          2          Seller's Initials _____ (____)

8.   **ADDENDA AND ADVISORIES**  (Paragraph 4 of Offer)

Seller is a bankruptcy trustee and thus some items in subparagraphs 4A and 4B may not apply, and thus will not be provided by Seller.

9.   **DEPOSITS**  (Paragraph 5 of Offer)

Paragraph 5 of the Offer, including subparagraphs 5A(1) and 5A(2), is modified to provide that the deposit shall be paid directly to Seller, not to Escrow Holder.

10.   **CLOSING AND POSSESSION**  (Paragraph 7 of Offer)

Paragraph 7 of the Offer is modified to provide that, except as expressly set forth in this Overbid Agreement, Buyer acknowledges that Seller has made no statements, representations or warranties, written or oral, expressed or implied, with respect to the physical, legal, economic, or other condition of the Property or the suitability of the Property for Buyer's purposes, and by proceeding to Closing, Buyer hereby acknowledges and agrees that Buyer is familiar with the Property, and has conducted such investigation of the Property as Buyer has deemed necessary and appropriate.

Subparagraph 7B(1) is modified to provide that all Seller's personal property and debris from inside the house, garage, and covered patio will be removed prior to Close of Escrow.

Subparagraph 7D of the Offer is deleted in its entirety.

Subparagraph 7E of the Offer is deleted in its entirety and replaced with the following: Seller shall provide all keys in her possession or control on the date of closing.

11.   **ITEMS INCLUDED IN AND EXCLUDED FROM SALE**  (Paragraph 9 of the Offer)

Subparagraphs 9B(3), 9B(4), 9B(5), 9B(6), and 9B(7) of the Offer are deleted in their entirety.

Subparagraph 9C of the Offer is modified to provide that brackets attached to walls, floors or ceilings may remain with the Property. Notwithstanding any provision in the Offer to the contrary, Seller shall not be obligated to make any Repairs to the Property.

12.   **STATUTORY AND OTHER DISCLOSURES AND CANCELLATION RIGHTS**
(Paragraphs 11 and 12 of Offer)

Paragraphs 11 and 12 of the Offer are modified as follows: As to subparagraphs 11A, 11B, 11C, 11D, 11K, 11L, 11M, 11N, and Paragraph 12 of the Offer, Buyer understands and agrees that certain disclosures otherwise required in the sale of real property are not required of Seller, as a fiduciary administering a bankruptcy estate. No disclosures from which Seller is exempt have or will be made in connection with the proposed sale of the Property. Seller shall provide to Buyer any such documentation that she has in her possession.

13.   **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY**
(Paragraph 12 of Offer)

While this Agreement is in effect, Buyer, its agent, contractors and subcontractors shall have the right to enter upon the Property at reasonable times during ordinary business hours and upon prior notice to Seller, to make any and all inspections and tests as Buyer reasonably deems desirable and which may be

Buyer's Initials _____ ( _____ )          3          Seller's Initials _____ )

accomplished without causing any alteration or damage to the Property. Buyer agrees to indemnify, defend and hold Seller and the Property harmless from any and all costs, loss, liability, damages or expenses, of any kind or nature, arising out of or resulting from such entry. The foregoing indemnity and defense obligation of Buyer shall survive the termination of this Agreement. Buyer shall have no right to terminate this Agreement based on the results of such inspections and tests except as provided in the Offer.

(a)  Except as expressly set forth in this Overbid Agreement, Buyer acknowledges that Seller has made no statements, representations or warranties, written or oral, expressed or implied, with respect to the physical, legal economic or other condition or the Property or the suitability of the Property for Buyer's purposes.

(b)  Buyer understands that the Property is being sold in an "**as is, where is**" condition. Buyer has knowledge that access to the interior is not a condition of this sale. It will be Buyer's responsibility to coordinate with the County Health Department and/or other agencies regarding the safety and entry into the Property.

(c)  Buyer hereby acknowledges and agrees that Buyer is familiar with the Property, and has conducted such investigation of the Property as Buyer has deemed necessary and appropriate. Buyer acknowledges and agrees that Buyer shall, upon the close of escrow, acquire the Property in its "**as is**" condition, and shall assume all risk with respect to any defects in the condition of the Property, including any latent defects, hazardous or toxic waste, any violation, deficiency, or failure to comply with any safety, building or other code, regulation, statute or law, and any restrictions, obligations, benefits and burdens whatsoever regarding the use of the Property; and Buyer hereby waives all claims against Seller with respect thereto and shall indemnify, defend and hold Seller harmless from and against all claims, liabilities, losses, damages, costs, including reasonable attorneys' fees, with respect thereto, arising or asserted on or after the close of escrow. With respect to the foregoing, Buyer expressly waives any benefits of Cal. Civ. Code Section 1542, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN TO HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

**Buyer's Initials:** _MGA_  **Seller's Initials:** _H_

(d)  Notwithstanding Paragraph 12 of the Offer and this Paragraph 13 of this Overbid Agreement, Seller shall disclose solely adverse material facts, which are actually known to Seller. Buyer acknowledges that Seller has no personal nor independent knowledge of the Property, nor any duty to investigate with respect thereto for purposes of this transaction, and that Seller will not be in a position to disclose adverse material facts, even if they patently exist at the Property. Seller shall exercise her good faith efforts in providing Buyer with information material to the Property, which is in her possession, if any. Nothing herein, however, shall be construed as in any way limiting the "**as is**" nature of this transfer.

Buyer's Initials _MN_ ) _GA_    4    Seller's Initials _H_ )

14.    **TITLE AND VESTING**  (Paragraph 13 of Offer)

Subparagraph 13F of the Offer is modified to provide that title shall be transferred by **quitclaim deed**, together with a Court order confirming the sale free and clear of liens, claims and interests.

15.    **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS** (Paragraph 14 of Offer)

Subparagraph 14B is of the Offer is deleted in its entirety.  ALL Buyer's contingencies are waived.

Subparagraph 14B(4) of the Offer is deleted in its entirety.

Subparagraphs 14C(1) and 14C(2) of the Offer are modified to conform with Paragraph 19 of this Overbid Agreement (Liquidated Damages).

16.    **REPAIRS**  (Paragraph 15 of Offer)

Notwithstanding any provision in the Offer to the contrary, Seller shall not be obligated to make any Repairs to the Property.

17.    **ATTORNEY'S FEES**  (Paragraph 22 of Offer)

Paragraph 22 of the Offer is modified as follows:  All disputes relating to this transaction shall be decided by the Bankruptcy Court and no other tribunal.  Any award of attorney's fees shall be decided by the Bankruptcy Court.

18.    **LEGALLY AUTHORIZED SIGNER**  (Paragraph 28 of Offer)

Seller is the representative of the bankruptcy estate described above, and she was appointed by the United States Trustee for the Southern District of California.

19.    **LIQUIDATED DAMAGES**  (Paragraph 29 of Offer)

Paragraph 29 of the Offer is deleted in its entirety and replaced with the following:

**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid.  Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement.**

**Buyer's Initials:** _/// GA_     **Seller's Initials:** _///_

20.    **MEDIATION; ARBITRATION OF DISPUTES**  (Paragraphs 30 and 31 of Offer)

Paragraphs 30 and 31 of the Offer are deleted in their entirety and replaced by the following:  Any and all disputes arising under the Offer and this Overbid Agreement shall be decided, if necessary, by the Bankruptcy Court and no other tribunal.

Buyer's Initials (_///_ ) (_GA_)          5          Seller's Initials (_///_ )

21. **ACCEPTANCE OF OFFER** (Paragraph 33 of Offer)

Except as amended hereby, the terms of the Offer shall continue in full force and effect. To the extent any provision of this Overbid Agreement is inconsistent with the terms of the Offer, this Overbid Agreement shall be deemed to supersede and replace the inconsistent provisions of the Offer.

Buyer acknowledges and understands that the Property is an asset of the bankruptcy estate and, therefore, Seller has authority to execute the Offer and Overbid Agreement herein, and sell the Property only pursuant to Court approval.

22. **IRREVOCABLE AGREEMENT**

This Overbid Agreement is irrevocable.

This Overbid Agreement has been executed as of each date set forth below.

**BUYER** (if Buyer is an entity):

Dated: January _11_, 2024

Name of Entity: _____

Signature: _Mustafa Amanatullah_

Name: _Mustafa Amanatullah_

Title: _____

**BUYER** (if Buyer is one or more individuals):

Dated: January _11_, 2024

Signature: _Gulshan Amanatullah_

Name: _Gulden Amanatullah_

Dated: January ___, 2024

Signature: _____

Name: _____

**SELLER:**

Dated: January _4_, 2024

_____

Leslie T. Gladstone, Trustee
Estate of L. Robert Jellinek,
Bankruptcy Case No. 22-12836-MM7

Buyer's Initials (_MA_) (_GA_)          6          Seller's Initials (_LG_)

**EXHIBIT A**

**SELLER'S FORM CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS
AND RELATED DOCUMENTS**

Buyer's Initials _____ ( _____ )          7          Seller's Initials ( _____ )

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C



CALIFORNIA
ASSOCIATION
OF REALTORS®

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/21)

*CB* — DS

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

## SELLER AND BUYER RESPONSIBILITIES

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

Buyer/Seller/Landlord/Tenant *Mustafa Amanatullah* ___ **Mustafa Amanatullah** Date 11/21/2023

Buyer/Seller/Landlord/Tenant *Gulden Amanatullah* ___ **Gulden Amanatullah** Date 11/21/2023

Agent ___ **Compass** ___ DRE Lic. # __01527365__

By *Antoinette Embry* ___ Real Estate Broker (Firm) **Antoinette Embry** DRE Lic. # __01305747__ Date 11/21/2023
(Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**

EQUAL HOUSING
OPPORTUNITY

*Antoinette Embry | Compass*

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

e46c898b-1549-4652-894c-1f96a50a0318

## CIVIL CODE SECTIONS 2079.13 - 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

| | | |
|---|---|---|
| Seller's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

| | | |
|---|---|---|
| Seller's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

| | | |
|---|---|---|
| Buyer's Brokerage | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

| | | |
|---|---|---|
| Buyer's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**AD REVISED 12/21 (PAGE 2 OF 2)**



*Antoinette Embry | Compass*

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

a46c6t50-1549-46b2-894c-1f96a50a0318

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C



CALIFORNIA
ASSOCIATION
OF REALTORS®

**FAIR HOUSING AND DISCRIMINATION ADVISORY**
(C.A.R. Form FHDA, Revised 6/23)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodation; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws showing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;
   E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

© 2023, California Association of REALTORS®, Inc.

**FHDA REVISED 6/23 (PAGE 1 OF 2)**

EQUAL HOUSING OPPORTUNITY

*Antoinette Embry | Compass*

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**
6abc3d99-57bb-4248-a1fb-7399ab3f1abd

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):

    **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,

    **(ii)** Charging that person higher rent or increased security deposit, or

    **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/ neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: **https://calcivilrights.ca.gov/housing/**

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC,* 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant _Mustafa Amanatullah_      *Mustafa Amanatullah* Date 11/21/2023

Buyer/Tenant _Gulden Amanatullah_      *Gulden Amanatullah* Date 11/21/2023

Seller/Housing provider _____ XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX Date XXXXXXX

Seller/Housing provider _____ Leslie T. Gladstone, Chapter 7 Trustee Date 11/22/2023 | 2:19 PM

735B8EEDCDA62482...

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**FHDA REVISED 6/23 (PAGE 2 OF 2)**



**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

*Antoinette Embry | Compass*

6ebc3d89-67bb-4248-a15b-7399ab5f1abd



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX _Robert T. Yalimeh Shabiheh Personal Residence Trust_ | Date 11/22/2023 \| 2:19 F |
| Seller | _Leslie T. Gladstone, Chapter 7 Trustee_ | Date |
| Buyer _Mustafa Amanatullah_ | _Mustafa Amanatullah_ | Date 11/21/2023 |
| Buyer _Gulden Amanatullah_ | _Gulden Amanatullah_ | Date 11/21/2023 |

Buyer's Brokerage Firm _Compass_ DRE Lic # _01527365_

By _Antoinette Embry_ _Antoinette Embry_ DRE Lic # _01305747_ Date 11/21/2023

Seller's Brokerage Firm _Coldwell Banker West_ DRE Lic # XXXXXXX 01481919

By _C.G...._ _Christine Golemb_ DRE Lic # _01861531_ Date 11/22/2023 \| 1:45 F

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**



_Antoinette Embry | Compass_

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)



CALIFORNIA
ASSOCIATION
OF REALTORS®

**WIRE FRAUD AND ELECTRONIC FUNDS
TRANSFER ADVISORY**
(C.A.R. Form WFA, Revised 12/21)

Property Address: _____ **5814 Ranch View Rd, Oceanside, CA 92057** _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

**ACCORDINGLY, YOU ARE ADVISED:**
  1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
  2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY.** Do not use any different phone number or account number included in any emailed transfer instructions.
  3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
  4. **Avoid sending personal information in emails or texts.** Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.
  5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant *Mustafa Amanatullah* _____ **Mustafa Amanatullah** Date 11/21/2023

Buyer/Tenant *Gulden Amanatullah* _____ **Gulden Amanatullah** Date 11/21/2023

Seller/Landlord _____ XXXXXXXXXXXXXXXXXXXXXXXXX Date _____

Seller/Landlord _____ Leslie T. Gladstone, Chapter 7 Trustee Date 11/22/2023 | 2:19 PM PST
— 735BEEDCDA62482...

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



EQUAL HOUSING
OPPORTUNITY

**WFA REVISED 12/21 (PAGE 1 OF 1)**

*Antoinette Embry | Compass*

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**
f8679de9-ac60-497b-9d4e-26054595c737

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C


CALIFORNIA
ASSOCIATION
OF REALTORS®

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
(C.A.R. FORM RPA, Revised 12/22)

Date Prepared: __11/21/2023__

**1. OFFER:**
   **A. THIS IS AN OFFER FROM** _____Mustafa Amanatullah, Gulden Amanatullah_____ ("Buyer").
   **B. THE PROPERTY** to be acquired is _____5814 Ranch View Rd_____, situated
   in ___Oceanside___ (City), ___San Diego___ (County), California, ___92057___ (Zip Code),
   Assessor's Parcel No(s). _____157-600-16-00_____ ("Property").
   **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   **C. THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   **D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

**2. AGENCY:**
   **A. DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller. **01481919**
   **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
   **Seller's Brokerage Firm** _____Coldwell Banker West_____ License Number __XXXXXX__
   Is the broker of (check one): ☒ the Seller; or ☐ both the Buyer and Seller (Dual Agent).
   **Seller's Agent** _____Christine Golemb_____ License Number __01861531__
   Is (check one): ☒ the Seller's Agent (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
   **Buyer's Brokerage Firm** _____Compass_____ License Number __01527365__
   Is (check one): ☒ the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
   **Buyer's Agent** _____Antoinette Embry_____ License Number __01305747__
   Is (check one): ☒ the Buyer's Agent (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
   **C.** ☐ More than one Brokerage represents ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   **D. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

|  | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | Purchase Price | $ _____949,000.00_____ | ☒ All Cash |
| B |  | Close Of Escrow (COE) | __30__ Days after Acceptance OR on _____ (date) |  |
| C | 32A | Expiration of Offer | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or _____ ☐ AM/☐ PM |  |
| D(1) | 5A(1) | Initial Deposit Amount | $ __18,980.00__ ( __2.00__ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _____) business days after Acceptance by wire transfer OR ☐ _____ |
| D(2) | 5A(2) | ☐ Increased Deposit (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR ☐ _____ (date) OR ☐ _____ |
| E(1) | 5C(1) | Loan Amount(s): First / Interest Rate / Points / If FHA or VA checked, Deliver list of lender required repairs | $ _____ ( _____ % of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed _____ % • Buyer to pay up to _____ points to obtain the rate above 17 (or _____) Days after Acceptance | Conventional or, if checked, ☐ FHA (Forms FVAC/HID attached) ☐ VA (Form FVAC attached) ☐ Seller Financing ☐ Other: |
| E(2) | 5C(2) | Additional Financed Amount / Interest Rate / Points | $ _____ ( _____ % of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed _____ % • Buyer to pay up to _____ points to obtain the rate above | Conventional or, if checked, ☐ Seller Financing ☐ Other: |
| E(3) | 7A | Occupancy Type | Primary, or if checked, ☐ Secondary ☐ Investment |  |
| F | 5D | Balance of Down Payment | $ _____930,020.00_____ |  |
|  |  | PURCHASE PRICE TOTAL | $ _____949,000.00_____ |  |

© 2022, California Association of REALTORS®, Inc.

**RPA REVISED 12/22 (PAGE 1 OF 16)**

Buyer's Initials __MA__ / __GA__    Seller's Initials __CGCT__ (DS)

*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

Property Address: **5814 Ranch View Rd, Oceanside, CA 92057**     Date: **11/21/2023**

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | ☐ $_____ (_____% of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: |
| G(2) | | ADDITIONAL FINANCE TERMS: _____ |  |  |
| G(3) | 18 | ☐ Seller agrees to pay the obligation of Buyer to compensate Buyer's Broker under a separate agreement (C.A.R. Form SPBB attached). Seller's Broker's offer, if any, to compensate Buyer's Broker is unaffected unless Otherwise Agreed. | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| **I** | | **Intentionally Left Blank** | | |
| J | 16 | Final Verification of Condition | 5 (or _30_) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or _____) Days after Acceptance | |
| **L** | | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | Loan(s) | 17 (or _____) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $_____ | 17 (or _____) Days after Acceptance | ☒ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or _____) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | Informational Access to Property Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or _____) Days after Acceptance | Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form |
| L(4) | 8D, 14A | Review of Seller Documents | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | CR-B) and checking the applicable box therein. Removal or Waiver at |
| L(5) | 8E, 13A | Preliminary ("Title") Report | 17 (or _____) Days after Acceptance or 5 Days after Delivery, whichever is later | time of offer is against Agent advice. See paragraph 8H. |
| L(6) | 8F, 11L | Common Interest Disclosures required by Civil Code § 4525 or this Agreement | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | ☐ CR-B attached |
| L(7) | 8G, 9B(6) | Review of leased or liened items (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(8) | 8J | Sale of Buyer's Property. Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ **C.A.R. Form COP attached** | | |
| **M** | | **Possession** | **Time for Performance** | **Additional Terms** |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or ☐ ____ ☐ AM/☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | Seller Occupied or Vacant units | COE date or, if checked below, ☐ ____ days after COE (29 or fewer days) ☐ ____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | Occupied units by tenants or anyone other than the Seller | ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached | Seller shall disclose to Buyer if occupied by tenants or persons other than the Seller, and attach TOPA in a counter offer if not part of Buyer's offer. |
| **N** | | **Documents/Fees/Compliance** | **Time for Performance** | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after Delivery | |
| N(3) | 11L(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |

**RPA REVISED 12/22 (PAGE 2 OF 16)**    Buyer's Initials _mA_ / _GA_    Seller's Initials _LTGLT_

Antoinette Embry | Compass

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Property Address: _____5814 Ranch View Rd, Oceanside, CA 92057_____ Date: ____11/21/2023____

| O | Intentionally Left Blank | | | |
|---|---|---|---|---|
| **P** | **Items Included and Excluded** | | | |

| P(1) | 9 | **Items Included - All items specified in Paragraph 9B are included and the following, if checked:** | | |
|---|---|---|---|---|

☒ Stove(s), oven(s), stove/oven combo(s);     ☐ Video doorbell(s);     ☐ Above-ground pool(s) / ☐ spa(s);
☒ Refrigerator(s);     ☐ Security camera equipment;     ☒ Bathroom mirrors, unless excluded below;
☐ Wine Refrigerator(s);     ☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;     ☐ Electric car charging systems and stations;
☒ Washer(s);     ☐ Smart home control devices;     ☐ Potted trees/shrubs;
☒ Dryer(s);     ☐ Wall mounted brackets for video or audio equipment;
☒ Dishwasher(s);
☒ Microwave(s);
**Additional Items Included:**
☐ _____.  ☐ _____.  ☐ _____.

| P(2) | | **Excluded Items:** | | |
|---|---|---|---|---|

☐ _____;  ☐ _____;  ☐ _____;

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | **Paragraph #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____ | ☒ Environmental<br>☐ Other _____<br>☒ Provided by: _Disclosure Source_ |
| Q(2) | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(3) | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(6) | 10B(2) | Government Required Point of Sale **corrective/remedial actions** | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(7) | 19B | Escrow Fee | ☐ Buyer ☐ Seller ☐ Both _____<br>☒ Each to pay their own fees | Escrow Holder: _Seller's Choice_ |
| Q(8) | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____ | Title Company (if different from Escrow Holder): _Seller's Choice_ |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(11) | | City transfer tax, fees | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(12) | 11L(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | ☐ Buyer ☐ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both _____ | |
| Q(16) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(17) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(18) | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: _Enhanced Plus Plan_ | ☐ Buyer ☒ Seller ☐ Both _____<br>☐ Buyer waives home warranty plan | If Seller or Both checked, Seller's cost not to exceed $ _825.00_ Issued by: _Fidelity National Home Warranty_ |
| **R** | | **OTHER TERMS:** _Buyer requests seller to provide details of city or county violations filed against the property within 7 days of acceptance_ | | |

**RPA REVISED 12/22 (PAGE 3 OF 16)**     Buyer's Initials _MA_ / _GA_     Seller's Initials _LTGCT_

*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**

488a4ed4-0a68-4918-a8a3-ef3d49355b0d

Property Address: _____5814 Ranch View Rd, Oceanside, CA 92057_____ Date:_____11/21/2023_____

**4. PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

**A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)   ☐ Other _____

**B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☐ Addendum #_____ (C.A.R. Form ADM)   ☐ Short Sale Addendum (C.A.R. Form SSA)
☐ Back Up Offer Addendum (C.A.R. Form BUO)   ☐ Court Confirmation Addendum (C.A.R. Form CCA)
☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)   ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
☐ Other _____   ☐ Other _____

**C. BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
☑ Buyer's Investigation Advisory (C.A.R. Form BIA)   ☑ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
☑ Wire Fraud Advisory (C.A.R. Form WFA)   ☑ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
       (Parties may also receive a privacy disclosure from their own Agent.)
☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)   ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
☐ Trust Advisory (C.A.R. Form TA)   ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ REO Advisory (C.A.R. Form REO)   ☐ Probate Advisory (C.A.R. Form PA)
☐ Other: _____   ☐ Other _____

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. DEPOSIT:**
(1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
(2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.
(3) **RETENTION OF DEPOSIT: Paragraph 29,** if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. **Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.**

**B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C. LOAN(S):**
(1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1).**
(2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.
(3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller or Buyer's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. The contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B,** Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
(4) **FHA/VA:** If FHA or VA is checked in **paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1),** Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3H) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**
**A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B.**
**B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E.** If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

**RPA REVISED 12/22 (PAGE 4 OF 16)**    Buyer's Initials _MA_ / _GA_    Seller's Initials _LTGCT_ / _DS_

Property Address: _____5814 Ranch View Rd, Oceanside, CA 92057_____ Date:____11/21/2023____

**C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy.  Occupancy may impact available financing.  **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, as described C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

**B. CONDITION OF PROPERTY ON CLOSING:**

(1) Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date.  If items are not removed when possession is delivered to Buyer, all items may be deemed abandoned.  Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

(2) **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**C. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties.  Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**E.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.

(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(5) **NO LOAN CONTINGENCY:** If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement.  If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

(3) ☑ Fair Appraisal Act: The Parties acknowledge receipt of the attached Fair Appraisal Act Addendum (C.A.R. Form FAAA).

**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property.  See **paragraph 12**.

**D. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A**.

Property Address: _____5814 Ranch View Rd, Oceanside, CA 92057_____ Date:_____11/21/2023_____

**E.   TITLE:**
   (1)  This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title.  Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
   (2)  Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**F.   CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11L** ("CI Disclosures").

**G.   BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement.  Any assumption of the lease shall not require any financial obligation or contribution by Seller.  Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**H.   REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.**  If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency.  **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**I.   REMOVAL OF CONTINGENCY OR CANCELLATION:**
   (1)  **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
   (2)  For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
   (3)  If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**J.   SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

**9.   ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A.   NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed.  Any items included herein are components of the home and are not intended to affect the price.  All items are transferred without Seller warranty.

**B.   ITEMS INCLUDED IN SALE:**
   (1)  All EXISTING fixtures and fittings that are attached to the Property;
   (2)  EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
   **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.
   (3)  Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
   (4)  Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device.  Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale.  Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included.  Seller is advised to use a counter offer to address more directly any items to be excluded.
   (5)  Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features.  Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow.  Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer.  Buyer is advised to change all passwords and ensure the security of any smart home features.
   (6)  **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

Buyer's Initials _MA_ / _GA_    Seller's Initials _LTGCT_

*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

Property Address: <u>5814 Ranch View Rd, Oceanside, CA 92057</u>      Date: <u>11/21/2023</u>

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Buyer warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A. INSPECTIONS, REPORTS, TESTS AND CERTIFICATES:** Paragraphs 3Q(1), (2), (3), and (5) only determines who is to pay for the inspection, report, test, certificate or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document.** Agreements for payment of required work should be specified elsewhere in **paragraph 3Q, or 3R, or in a separate agreement** (such as C.A.R. Forms RR, RRRR, ADM or AEA). Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**

**B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

(1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

(2) **POINT OF SALE REQUIREMENTS:**

(A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6)**. Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

(B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

(4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C. HOME WARRANTY:**

(1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18)**. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.

(2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

(3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.



Property Address: _____5814 Ranch View Rd, Oceanside, CA 92057_____ Date:____11/21/2023____

(4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B.** **LEAD DISCLOSURES:**
(1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C.** **HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer after the offer is Signed, Buyer shall have the right to: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D.** **DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E.** **WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1)**, **11B**, **11C**, and **11D** are prohibited by Law.

**F.** **RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(4)** OR **5 Days** after Delivery of any disclosures specified in **paragraphs 11 A, B, C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G.** **TERMINATION RIGHTS:**
(1) **Statutory and Other Disclosures:** If any disclosure specified in **paragraphs 11A, B, C, or D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H.** **WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I.** **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J.** **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K.** **NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**L.** **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
(1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

**RPA REVISED 12/22 (PAGE 8 OF 16)**

Buyer's Initials _MA_ / _GA_     Seller's Initials _LtGLt_ / ____



*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C

Property Address: **5814 Ranch View Rd, Oceanside, CA 92057**     Date: **11/21/2023**

   (2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**M. SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller may use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**N. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
  **A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").
  **B.** Buyer Investigations include, but are not limited to:
    (1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
      (A) A general home inspection.
      (B) An inspection for lead-based paint and other lead-based paint hazards.
      (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
      (D) Any other specific inspections of the physical condition of the land and improvements.
    (2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations include, but are not limited to, an investigation of the availability and cost of general homeowner's insurance, flood insurance and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more info.
  **C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.
  **D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.
  **E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**
  **A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.
  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.
  **C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.
  **D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.
  **E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**RPA REVISED 12/22 (PAGE 9 OF 16)**     Buyer's Initials _MA_ / _GA_    Seller's Initials _LTGLt,_ 

*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Property Address: _____**5814 Ranch View Rd, Oceanside, CA 92057**_____ Date:____**11/21/2023**____

   **F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

   **G.** Buyer shall receive a "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B, CR-S or CC).**

   **A. SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 11N, 13A, 13C, and 28.**

   **B. BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

     (1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

     (2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

     (3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). However, if any report, disclosure, or information for which Seller is responsible is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.

     (4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1)**.

   **C. SELLER RIGHT TO CANCEL:**

     (1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

     (2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8G**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2)** and **29**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

     (3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

   **D. BUYER RIGHT TO CANCEL:**

     (1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Buyer shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

     (2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

     (3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**RPA REVISED 12/22 (PAGE 10 OF 16)**      Buyer's Initials _**MA**_ / _**GA**_     Seller's Initials _**LTGLT**_

Antoinette Embry | Compass

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

Property Address: _____5814 Ranch View Rd, Oceanside, CA 92057_____ Date:___11/21/2023___

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

**F. EFFECT OF REMOVAL OF CONTINGENCIES:**
(1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
(2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G. DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the deposits, less fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property shall be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS AND AGENTS:**
**A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer. If Seller agrees to pay Buyer's Broker (see **paragraph 3G(3)**), Seller shall be entitled to a copy of the written portion of the compensation agreement between Buyer and Buyer's Broker identifying the compensation to be paid. See C.A.R. Form SPBB for further information.
**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

Buyer's Initials _MA_ / _GA_   Seller's Initials _LTGCT_ / _____

Antoinette Embry | Compass

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

488a6ed4-0a68-401b-a8a3-ef3d49355b0d

Property Address:_____5814 Ranch View Rd, Oceanside, CA 92057_____ Date:___11/21/2023___

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11L(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** or **paragraph 3 of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B.** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

**C.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after Acceptance. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

**D.** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**E.** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F.** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted, and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller's, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23. ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K,** Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA). Parties shall provide any assignment agreement to Escrow Holder within 1 Day after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment as specified in this paragraph.

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**RPA REVISED 12/22 (PAGE 12 OF 16)**   Buyer's Initials _MA_ / _GA_   Seller's Initials _UtGCt_ 

*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

48ba4ed4-9a68-4218-aba3-ef2d4355066d

Property Address: _____5814 Ranch View Rd, Oceanside, CA 92057_____ Date:____11/21/2023____

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A.** **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

**B.** **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**

**C.** **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D.** **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E.** **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F.** **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G.** **"Close Of Escrow",** including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H.** **"Copy"** means copy by any means including photocopy, facsimile and electronic.

**I.** **"Counting Days"** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, the first Day for counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

**J.** **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**K.** **"Deliver", "Delivered"** or **"Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

**L.** **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**M.** **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**N.** **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

**O.** **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

**P.** **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**Q.** **"Sign"** or **"Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

**26. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**27. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**RPA REVISED 12/22 (PAGE 13 OF 16)**          Buyer's Initials __mA__ / __GA__     Seller's Initials __LTGLT__ 

*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Property Address: __5814 Ranch View Rd, Oceanside, CA 92057__ Date:____11/21/2023____

**28. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

<table>
<tr><td>

**29. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages)**:**
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials _____/_____          Seller's Initials _____/_____

</td></tr>
</table>

**30. MEDIATION:**
   **A.** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
   **B.** **ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 31B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.**

<table>
<tr><td>

**31. ARBITRATION OF DISPUTES:**
   **A. The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**
   **B. EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.**
   **C. PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or (iii) the filing of a mechanic's lien.**
   **D. AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**
   **E. "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

      **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____/_____          Seller's Initials _____/_____

</td></tr>
</table>

Buyer's Initials _MA_ /_GA_     Seller's Initials _LtGLt,_   

*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C

Property Address: _____5814 Ranch View Rd, Oceanside, CA 92057_____ Date:____11/21/2023____

**32. BUYER'S OFFER**

**A. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

**B. ☐ ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

(3) The name(s) of the Legally Authorized Signer(s) is/are: _____.

(4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

(5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____
_____

**C.** The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. BUYER SIGNATURE(S):**

(Signature) By _*Mustafa Amanatullah*_____ Date: 11/21/2023

Printed name of BUYER: _____ **Mustafa Amanatullah**_____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By _*Gulden Amanatullah*_____ Date: 11/21/2023

Printed name of BUYER: _____ **Gulden Amanatullah**_____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

**A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.

☒ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)

☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

**B. ☐ Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

(3) The name(s) of the Legally Authorized Signer(s) is/are: Leslie T. Gladstone, Chapter 7 Trustee.

(4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

(5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____
Estate of L. Robert Jellinek, Bankruptcy Case No. 22-12836-MM7

**C.** The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. SELLER SIGNATURE(S):**

(Signature) By _____ Date: 11/22/2023 | 2:19 I

Printed name of SELLER: ___XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX___ Leslie T. Gladstone, Chapter 7 Trustee

☐ Printed Name of Legally Authorized Signer: Leslie T. Gladstone, Chapter 7 Trustee Title, if applicable, Trustee

(Signature) By _____ Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**OFFER NOT ACCEPTED:** _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____(date)
Seller's Initials

**RPA REVISED 12/22 (PAGE 15 OF 16)**

*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

31

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C

Property Address: _____**5814 Ranch View Rd, Oceanside, CA 92057**_____ Date:_____**11/21/2023**_____

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   A. Buyer's Brokerage Firm _____**Compass**_____ Lic. # _____**01527365**_____
   By _**Antoinette Embry**_____ _**Antoinette Embry**_ Lic.#_____**01305747**_____ Date _11/21/2023_
   By _____ Lic.#_____ Date _____
   Address _____ City _____ State _____ Zip _____
   Email _____**antoinette.embry@compass.com**_____ Phone # _____**(619) 504-9979**_____
   ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
   ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

   **Designated Electronic Delivery Address(es): (Check all that apply)**
   ☒ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

   B. Seller's Brokerage Firm _____**Coldwell Banker West**_____ **01481919** Lic. # _____~~XXXXX~~_____
   By _**Christine Golemb**_ _____ **Christine Golemb** Lic.#____**01861531**____ Date _11/22/2023 | 1:45 PM PST_
   By ___1B14C8EAEAA470_____ Lic.#_____ Date _____
   Address _**410 Kalmia Street, San Diego, CA 92101**_ City _____ State _____ Zip _____
   Email _____**christie@christiegolemb.com**_____ Phone # _____**619-994-8068**_____
   ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
   ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

   **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent) (Check all that apply):**
   ☒ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____

Escrow Holder _____ Escrow # _____

By _____ Date _____

Address _____

Phone/Fax/E-mail_____

Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____/_____ Seller's Brokerage Firm presented this offer to Seller on _____(date).
Agent or Seller Initials

Buyer's Initials _mA_ / _GA_  Seller's Initials _LTGCT_

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RPA REVISED 12/22 (PAGE 16 OF 16)**



*Antoinette Embry | Compass*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**

*486a4ed4-0a68-4016-a8a3-ef3d4335566d*

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C



CALIFORNIA
ASSOCIATION
OF REALTORS®

**BUYER'S INVESTIGATION ADVISORY**
**(C.A.R. Form BIA, Revised 12/21)**

**Property Address** _____ _5814 Ranch View Rd, Oceanside, CA 92057_ _____

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being pur-chased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A gen-eral physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS;WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.

   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

**BIA REVISED 12/21 (PAGE 1 OF 2)**



EQUAL HOUSING
OPPORTUNITY

_Antoinette Embry | Compass_

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

75c79dd5-e33d-4460-83fc-7ab2ddf0f9c6

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer *Mustafa Amanatullah* _____ *Mustafa Amanatullah* Date 11/21/2023

Buyer *Gulden Amanatullah* _____ *Gulden Amanatullah* Date 11/21/2023

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 12/21 (PAGE 2 OF 2)**

*Antoinette Embry | Compass*

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C



CALIFORNIA
ASSOCIATION
OF REALTORS®

# FAIR APPRAISAL ACT ADDENDUM
### (C.A.R. Form FAAA, 6/22)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Other
_____ ("Agreement"),
dated 11/21/2023____, on property known as _____5814 Ranch View Rd, Oceanside, CA 92057_____ ("Property"),
in which _____XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX____ Leslie T. Gladstone, Chapter 7 Trustee is referred to as ("Seller")
and _____Mustafa Amanatullah, Gulden Amanatullah_____ is referred to as ("Buyer").

Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**By signing below, Buyer and Seller has each read, understands and acknowledges receipt of a copy of this Fair Appraisal Act Addendum.**

Buyer _*Mustafa Amanatullah*_____ *Mustafa Amanatullah* Date 11/21/2023_____

Buyer _*Gulden Amanatullah*_____ *Gulden Amanatullah* Date 11/21/2023_____

Seller ____DocuSigned by:_____ XXXXXXXXXXXXXXXXXXXXXXXXXXX Date _____
Leslie T. Gladstone, Chapter 7 Trustee
Seller _____ Date 11/22/2023 | 2:19 P
└─735BEEDCDA62482...

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**FAAA 6/22 (PAGE 1 OF 1)**



EQUAL HOUSING
OPPORTUNITY

*Antoinette Embry | Compass*

## FAIR APPRAISAL ACT ADDENDUM (FAAA PAGE 1 OF 1)
251a9504-2cca-4295-80c2-13110bfdcab6

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C



**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY,
DISCLOSURE AND NOTICE**
(C.A.R. Form CCPA, Revised 12/22)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant *Mustafa Amanatullah* _____ *Mustafa Amanatullah* Date 11/21/2023
Buyer/Seller/Landlord/Tenant *Gulden Amanatullah* _____ *Gulden Amanatullah* Date 11/21/2023

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/22 (PAGE 1 OF 1)**



*Antoinette Embry | Compass*

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**
72ec271b-08ff-4e29-bc05-cdd5eebea9e7

DocuSign Envelope ID: 33C978CA-8539-4F39-9B9A-D8106608849C

COUNTEROFFER NO. 1

| | |
|---|---|
| Seller: | Leslie T. Gladstone, Chapter 7 Trustee for the Estate of L. Robert Jellinek, Bankruptcy Case No. 22-12836-MM7, pending in the United States Bankruptcy Court for the Southern District of California |
| Buyer: | Mustafa Amanatullah, Gulden Amanatullah |
| Property: | 5814 Ranch View, Oceanside, CA 92057 |

This is a Counteroffer to the California Residential Purchase Agreement and Joint Escrow Instructions, dated November 21, 2023 (the "**Offer**"), for the property located at 5814 Ranch View, Oceanside, CA 92057 (the "**Property**"), in which Mustafa Amanatullah, Gulden Amanatullah (collectively, "**Buyer**") are listed as buyer.

The seller of the Property is Leslie T. Gladstone, Chapter 7 Trustee ("**Seller**") for the Estate of L. Robert Jellinek (the "**Bankruptcy Estate**"), Bankruptcy Case No. 22-12836-MM7, United States Bankruptcy Court for the Southern District of California (the "**Court**").

**Buyer acknowledges that the sale referred to herein, and any written modification to the terms set forth herein, is contingent upon the entry of a final order of the United States Bankruptcy Court approving such sale under the terms and conditions stated herein or as hereafter modified by mutual written agreement of the parties hereto. If Seller fails to obtain the final order of the Court, the monies received from Buyer shall be refunded to Buyer.**

Seller accepts all of the terms and conditions in the Offer with the following changes, deletions and amendments. Buyer understands that this may be one of multiple counteroffers being provided by Seller to various potential purchasers:

1.  **CLOSE OF ESCROW** (Paragraph 3 of Offer)

Subparagraph 3B of the Offer is modified as follows: Close of Escrow shall occur fifteen (15) days after entry of an Order by the Court approving the terms of the Offer, as amended by this Counteroffer, or as soon as is reasonably possible thereafter.

2.  **INITIAL DEPOSIT** (Paragraph 3 of Offer)

Subparagraph 3D(1) of the Offer is modified to provide that the Initial Deposit Amount shall be $28,470.00, payable to the Estate of Jellinek, Leslie T. Gladstone, Trustee, and delivered to Seller upon acceptance of this Counteroffer. The amount set forth in subparagraph 3F of the Offer shall be adjusted accordingly.

3.  **FINAL VERIFICATION OF CONDITION** (Paragraph 3 of Offer)

Subparagraph 3J of the Offer is modified to provide that final verification of condition shall be 5 Days prior to COE.

Buyer's Initials (*MA*) (*GA*)    1    Seller's Initials (*LTGCT*)

4.    **ITEMS INCLUDED AND EXCLUDED**  (Paragraph 3 of Offer)

Subparagraphs 3P(1) and 3P(2) of the Offer are modified to delete all checked boxes and to provide that items included in the sale are all appliances and other personal property existing on the Property as of the Close of Escrow.

5.    **ALLOCATION OF COSTS**  (Paragraphs 3 and 10 of Offer)

Paragraphs 3 and 10 of the Offer are modified as follows:

(a)    Subparagraphs 3Q(4), 3Q(5), and 3Q(6) shall be paid by **Buyer**. Subparagraph 10B(2)(B) is modified to provide that Seller shall provide to Buyer a copy of any applicable government-conducted or point-of-sale inspection report that is in her possession.

(b)    Subparagraph 3Q(7) is modified to provide that Buyer and Seller shall pay escrow fee 50/50 and Escrow Holder shall be Ticor Title Company (Carolyn Church).

(c)    Subparagraph 3Q(8) is modified to provide that the Owner's title policy shall be issued by Ticor Title Company (Candy Church).

(d)    Subparagraphs 3Q(10), 3Q(11), 3Q(12), 3Q(13), 3Q(14), 3Q(15), 3Q(16), and 3Q(17), if applicable, shall be paid by **Buyer**.

(e)    Buyer acknowledges and understands that the Property is an asset of the bankruptcy estate. As a result, Seller's obligation to pay any sums or costs or to take any action no matter how defined or designated, is contingent upon approval by the Court of the terms of this transaction, and the close of escrow for the sale of the Property. A hearing may be required by the Court.

6.    **OTHER TERMS**  (Paragraph 3 of Offer)

Subparagraph 3R of the Offer is modified as follows:

(a)    Seller accepts the Offer to purchase the Property and agrees to sell the Property subject to the conditions and provisions of the Counteroffer.

(b)    Except as amended herein, the terms of the Offer shall continue in full force and effect. To the extent any provision of this Counteroffer is inconsistent with the terms of the Offer, this Counteroffer shall be deemed to supersede and replace the inconsistent provisions of the Offer.

7.    **ADDENDA AND ADVISORIES**  (Paragraph 4 of Offer)

Seller is a bankruptcy trustee and thus some items in subparagraphs 4A and 4B may not apply, and thus will not be provided by Seller.

8.    **DEPOSITS**  (Paragraph 5 of Offer)

Paragraph 5 of the Offer, including subparagraphs 5A(1) and 5A(2), is modified to provide that the deposit shall be paid directly to Seller, not to Escrow Holder.

Buyer's Initials ( *MA* ) ( *GA* )            2            Seller's Initials ( *LTGG* )

9. **CLOSING AND POSSESSION** (Paragraph 7 of Offer)

Paragraph 7 of the Offer is modified to provide that, except as expressly set forth in this Counteroffer, Buyer acknowledges that Seller has made no statements, representations or warranties, written or oral, expressed or implied, with respect to the physical, legal, economic, or other condition of the Property or the suitability of the Property for Buyer's purposes, and by proceeding to Closing, Buyer hereby acknowledges and agrees that Buyer is familiar with the Property, and has conducted such investigation of the Property as Buyer has deemed necessary and appropriate.

Subparagraph 7A of the Offer is modified to provide that Seller shall exercise Seller's best reasonable efforts to have the Property vacated at the close of escrow, if applicable.

Subparagraph 7B(1)(iii) of the Offer is deleted in its entirety. Subparagraph 7B(1) is further modified to provide that Seller shall not be responsible for removing any debris and/or personal property from the Property and Seller shall have no obligation or liability to pay any costs for such removal.

Subparagraph 7D of the Offer is deleted in its entirety.

Subparagraph 7E of the Offer is deleted in its entirety and replaced with the following: Seller shall provide all keys in her possession or control on the date of closing.

10. **ITEMS INCLUDED IN AND EXCLUDED FROM SALE** (Paragraph 9 of the Offer)

Subparagraphs 9B(3), 9B(4), 9B(5), 9B(6), and 9B(7) of the Offer are deleted in their entirety.

Subparagraph 9C of the Offer is modified to provide that brackets attached to walls, floors or ceilings may remain with the Property. Notwithstanding any provision in the Offer to the contrary, Seller shall not be obligated to make any Repairs to the Property.

11. **STATUTORY AND OTHER DISCLOSURES AND CANCELLATION RIGHTS**
(Paragraphs 11 and 12 of Offer)

Paragraphs 11 and 12 of the Offer are modified as follows: As to subparagraphs 11A, 11B, 11C, 11D, 11K, 11L, 11M, 11N, and Paragraph 12 of the Offer, Buyer understands and agrees that certain disclosures otherwise required in the sale of real property are not required of Seller, as a fiduciary administering a bankruptcy estate. No disclosures from which Seller is exempt have or will be made in connection with the proposed sale of the Property. Seller shall provide to Buyer any such documentation that she has in her possession.

12. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY**
(Paragraph 12 of Offer)

While this Agreement is in effect, Buyer, its agent, contractors and subcontractors shall have the right to enter upon the Property at reasonable times during ordinary business hours and upon prior notice to Seller, to make any and all inspections and tests as Buyer reasonably deems desirable and which may be accomplished without causing any alteration or damage to the Property. Buyer agrees to indemnify, defend and hold Seller and the Property harmless from any and all costs, loss, liability, damages or expenses, of any kind or nature, arising out of or resulting from such entry. The foregoing indemnity and defense obligation of Buyer shall survive the termination of this Agreement. Buyer shall have no right to terminate this Agreement based on the results of such inspections and tests except as provided in the Offer.

Buyer's Initials (mA) (GA)     3     Seller's Initials (LTGGt)

(a)    Except as expressly set forth in this Counteroffer, Buyer acknowledges that Seller has made no statements, representations or warranties, written or oral, expressed or implied, with respect to the physical, legal economic or other condition or the Property or the suitability of the Property for Buyer's purposes.

(b)    Buyer understands that the Property is being sold in an **"as is, where is"** condition. Buyer has knowledge that access to the interior is not a condition of this sale. It will be Buyer's responsibility to coordinate with the County Health Department and/or other agencies regarding the safety and entry into the Property.

(c)    Buyer hereby acknowledges and agrees that Buyer is familiar with the Property, and has conducted such investigation of the Property as Buyer has deemed necessary and appropriate. Buyer acknowledges and agrees that Buyer shall, upon the close of escrow, acquire the Property in its **"as is"** condition, and shall assume all risk with respect to any defects in the condition of the Property, including any latent defects, hazardous or toxic waste, any violation, deficiency, or failure to comply with any safety, building or other code, regulation, statute or law, and any restrictions, obligations, benefits and burdens whatsoever regarding the use of the Property; and Buyer hereby waives all claims against Seller with respect thereto and shall indemnify, defend and hold Seller harmless from and against all claims, liabilities, losses, damages, costs, including reasonable attorneys' fees, with respect thereto, arising or asserted on or after the close of escrow. With respect to the foregoing, Buyer expressly waives any benefits of Cal. Civ. Code Section 1542, which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN TO HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

Buyer's Initials: _MA_ _GA_    Seller's Initials: _LTGGT_

(d)    Notwithstanding Paragraph 12 of the Offer and this Paragraph 12 of the Counteroffer, Seller shall disclose solely adverse material facts, which are actually known to Seller. Buyer acknowledges that Seller has no personal nor independent knowledge of the Property, nor any duty to investigate with respect thereto for purposes of this transaction, and that Seller will not be in a position to disclose adverse material facts, even if they patently exist at the Property. Seller shall exercise her good faith efforts in providing Buyer with information material to the Property, which is in her possession, if any. Nothing herein, however, shall be construed as in any way limiting the **"as is"** nature of this transfer.

13.    **TITLE AND VESTING** (Paragraph 13 of Offer)

Subparagraph 13F of the Offer is modified to provide that title shall be transferred by **quitclaim deed**, together with a Court order confirming the sale free and clear of liens, claims and interests.

14.    **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS** (Paragraph 14 of Offer)

Subparagraph 14B(4) of the Offer is deleted in its entirety.

Buyer's Initials ( _MA_ )( _GA_ )          4          Seller's Initials _LTGGT_

Subparagraphs 14C(1) and 14C(2) of the Offer are modified to conform with Paragraph 18 of this Counteroffer (Liquidated Damages).

15.  **REPAIRS**  (Paragraph 15 of Offer)

Notwithstanding any provision in the Offer to the contrary, Seller shall not be obligated to make any Repairs to the Property.

16.  **ATTORNEY'S FEES**  (Paragraph 22 of Offer)

Paragraph 22 of the Offer is modified as follows:  All disputes relating to this transaction shall be decided by the Bankruptcy Court and no other tribunal.  Any award of attorney's fees shall be decided by the Bankruptcy Court.

17.  **LEGALLY AUTHORIZED SIGNER**  (Paragraph 28 of Offer)

Seller is the representative of the bankruptcy estate described above, and she was appointed by the United States Trustee for the Southern District of California.

18.  **LIQUIDATED DAMAGES**  (Paragraph 29 of Offer)

Paragraph 29 of the Offer is deleted in its entirety and replaced with the following:

> **If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid.  Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement.**

Buyer's Initials _MA_  _GA_   Seller's Initials _LTGGT_

19.  **MEDIATION; ARBITRATION OF DISPUTES**  (Paragraphs 30 and 31 of Offer)

Paragraphs 30 and 31 of the Offer are deleted in their entirety and replaced by the following:  Any and all disputes arising under the Offer and this Counteroffer shall be decided, if necessary, by the Bankruptcy Court and no other tribunal.

20.  **ACCEPTANCE OF OFFER**  (Paragraph 33 of Offer)

This Counteroffer shall be deemed automatically revoked unless executed by the Buyer and delivered to Seller on or before 4:00 p.m. on November 27, 2023.  Notwithstanding the foregoing, Seller shall have the right to rescind this Counteroffer at any time prior to formal acceptance.

Except as amended hereby, the terms of the Offer shall continue in full force and effect.  To the extent any provision of this Counteroffer is inconsistent with the terms of the Offer, this Counteroffer shall be deemed to supersede and replace the inconsistent provisions of the Offer.

Buyer acknowledges and understands that the Property is an asset of the bankruptcy estate and, therefore, Seller has authority to execute the Offer and Counteroffer herein, and sell the Property only pursuant to Court approval.

Buyer's Initials ( _MA_  _GA_  )                5                Seller's Initials ( _LTGGT_

21.    **OVERBID POSSIBILITY**

Seller has authority to execute the Offer and Counteroffer and sell the Property only pursuant to Court approval.  The approval of the sale may be subject to overbid by the Court.  The minimum purchase price at overbid will be at least $10,000.00 more than the Purchase Price or such other price as is ordered by the Court.

22.    **MULTIPLE COUNTEROFFER**

Seller may be making a Counteroffer to another prospective buyer(s) on terms that may or may not be the same as in this Counteroffer.  Acceptance of this Counteroffer by Buyer shall not be binding unless and until it is subsequently re-signed by Seller below.

*[Remainder of page intentionally left blank]*

This Counteroffer has been executed as of each date set forth below.

SELLER:

Dated: __11/22/2023 | 2:19 PM PST__, 2023

Leslie T. Gladstone, Trustee
Estate of L. Robert Jellinek,
Bankruptcy Case No. 22-12836-MM7

    The undersigned Buyer hereby accepts the terms and conditions of this Counteroffer and agrees to be bound thereby.

*SUBJECT TO THE TERMS OF BUYER COUNTEROFFER 1, ATTACHED*

BUYER:

Dated: __11/26/2023__, 2023

*Mustafa Amanatullah*

Mustafa Amanatullah

Dated: __11/26/2023__, 2023

*Gulden Amanatullah*

Gulden Amanatullah

MULTIPLE COUNTER OFFER SIGNATURE LINE:

SELLER:

Dated: _____, 2023

Leslie T. Gladstone, Trustee
Estate of L. Robert Jellinek,
Bankruptcy Case No. 22-12836-MM7

Buyer's Initials (MA ) (GA )    7    Seller's Initials ( LTGLT )

DocuSign Envelope ID: DBBB42D1-7A28-49FF-BFB5-20FC86D2CF15




CALIFORNIA
ASSOCIATION
OF REALTORS®

## BUYER COUNTER OFFER No. 1
(C.A.R. Form BCO, Revised 6/23)

Date __11/26/2023__

This is a counter offer to the Seller Counter Offer No._____, OR ☐ Seller Multiple Counter Offer No._____, ☐ Other _____ ("Offer"),
dated __11/22/2023__, on property known as __5814 Ranch View Rd, Oceanside, CA 92057__ ("Property"),
between _____Mustafa Amanatullah, Gulden Amanatullah_____ ("Buyer")
and _____Robert L. Jellinek Qualified Personal Residence Trust_____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   **A.** The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final Agreement unless specifically referenced for inclusion in **paragraph 1D** of this or another Counter Offer or an addendum.
   **B.** Unless Otherwise Agreed or altered in another Counter Offer, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but the dollar amount of any initial and increased deposit and Seller credits shall remain unchanged from the original Offer.
   **C.** Unless Otherwise Agreed or altered in another Counter Offer, if in the original offer (such as **paragraph 3L(2)** of the RPA) the appraisal contingency amount is lower than the original offered price, then the dollar amount of any difference ("Appraisal Gap") shall remain unchanged and be deducted from the final contract price to create the final appraisal contingency amount. (For example, if the purchase price in the offer is $1,000,000, and Buyer reduces the appraisal contingency value to $950,000, the "Appraisal Gap" is $50,000. If the purchase price is increased to $1,200,000 as a result of this counter offer, the appraisal contingency value shall be adjusted to $1,150,000 ($1,200,000 less $50,000). If the property appraises below $1,150,000, Buyer may exercise the appraisal contingency right to cancel this Agreement.)
   **D.** OTHER TERMS: _1. Purchase price to be $901,500. 2. Kitchen refrigerator, stove/oven, cooktop, microwave, dishwasher, and laundry room washer and dryer to remain in the home and convey to buyers at close of escrow. 3. All sellers personal property and debris from inside the house, garage, and covered patio to be removed prior to the close of escrow. 4. At close of escrow, property to be delivered to buyers vacant and without a tenant or occupant of any kind._
   _____
   _____
   _____
   _____

   **D.** The following attached addenda are incorporated into this Buyer Counter Offer only when Signed by both Parties (if both Parties do not Sign and Deliver all attached addenda then any acceptance of this Buyer Counter Offer is not valid):
   ☐ Addendum No. _____
   ☐ _____          ☐ _____

2. **EXPIRATION:** This Buyer Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   **A.** Unless by 5:00PM on the third Day after the date this Buyer Counter Offer is signed in **paragraph 3** (if more than one signature then, the last signature date)(or ☐ by _____ ☐ AM/☐ PM on _____ (date)) it is Signed in **paragraph 4** by Seller and **(ii)** a copy of the Signed Buyer Counter Offer is Delivered to Buyer or Buyer's Authorized Agent
   **B.** OR If Buyer withdraws this Buyer Counter Offer anytime prior to Seller's Acceptance by communicating withdrawal to Seller or Seller's Agent (C.A.R. Form WOO may be used).

3. **OFFER: BUYER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED. The terms and conditions of those documents are incorporated into this Buyer Counter Offer unless Otherwise Agreed.**
   Buyer _Mustafa Amanatullah_ _____ _Mustafa Amanatullah_ Date 11/26/2023
   Buyer _Gulden Amanatullah_ _____ _Gulden Amanatullah_ Date 11/26/2023

4. **ACCEPTANCE: I/WE** accept the above Buyer Counter Offer and all Signed Addenda, if any, **(If checked ☒ SUBJECT TO THE ATTACHED SELLER COUNTER OFFER No. _____ OR SELLER MULTIPLE COUNTER OFFER No.** TWO _____) and acknowledge receipt of a Copy.
   Seller ┌─ DocuSigned by: ─┐ XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX Date 12/1/2023 | 6:45 AM
   Seller └── ──────────────┘ Leslie T. Gladstone, Chapter 7 Trustee Date _____
   └─735BEEDCDA62482...

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**BCO REVISED 6/23 (PAGE 1 OF 1)**

**BUYER COUNTER OFFER (BCO PAGE 1 OF 1)**

Antoinette Embry | Compass

DocuSign Envelope ID: 61076419-A115-48AE-ABF2-1FC431928984

CB

SELLER COUNTEROFFER NO. 2

| | |
|---|---|
| Seller: | Leslie T. Gladstone, Chapter 7 Trustee for the Estate of L. Robert Jellinek, Bankruptcy Case No. 22-12836-MM7, pending in the United States Bankruptcy Court for the Southern District of California |
| Buyer: | Mustafa Amanatullah, Gulden Amanatullah |
| Property: | 5814 Ranch View, Oceanside, CA 92057 |

This is a Seller Counteroffer No. 2 to the California Residential Purchase Agreement and Joint Escrow Instructions, dated November 21, 2023, as amended by Seller Counteroffer No. 1, and Buyer Counteroffer No. 1 (collectively, the "**Offer**"), for the property located at 5814 Ranch View, Oceanside, CA 92057 (the "**Property**"), in which Mustafa Amanatullah, Gulden Amanatullah (collectively, "**Buyer**") are listed as buyer.

The seller of the Property is Leslie T. Gladstone, Chapter 7 Trustee ("**Seller**") for the Estate of L. Robert Jellinek (the "**Bankruptcy Estate**"), Bankruptcy Case No. 22-12836-MM7, United States Bankruptcy Court for the Southern District of California (the "**Court**").

**Buyer acknowledges that the sale referred to herein, and any written modification to the terms set forth herein, is contingent upon the entry of a final order of the United States Bankruptcy Court approving such sale under the terms and conditions stated herein or as hereafter modified by mutual written agreement of the parties hereto. If Seller fails to obtain the final order of the Court, the monies received from Buyer shall be refunded to Buyer.**

Seller accepts all of the terms and conditions in the Offer with the following changes, deletions and amendments. Buyer understands that this may be one of multiple counteroffers being provided by Seller to various potential purchasers:

1.  **PURCHASE PRICE** (Paragraph 3 of Offer)

    Subparagraph 1D of Buyer Counteroffer No. 1 is modified as follows: The total Purchase Price shall be Nine Hundred Twenty-Five Thousand and 00/100ths Dollars ($925,000.00).

2.  **ITEMS INCLUDED AND EXCLUDED** (Paragraph 3 of Offer)

    Subparagraph 1D of Buyer Counteroffer No. 1 is modified to delete "Kitchen refrigerator stove/oven, cooktop, microwave, dishwasher, and laundry room washer and dryer to remain in the home and convey to buyers at close of escrow," and provide that items included in the sale are all appliances existing on the Property as of November 30, 2023.

3.  **ACCEPTANCE OF OFFER** (Paragraph 33 of Offer)

    This Counteroffer shall be deemed automatically revoked unless executed by the Buyer and delivered to Seller on or before 4:00 p.m. on December 4, 2023. Notwithstanding the foregoing, Seller shall have the right to rescind this Counteroffer at any time prior to formal acceptance.

Buyer's Initials ( _MA_ ) ( _GA_ )          1          Seller's Initials ( _LTGG_ )

Except as amended hereby, the terms of the Offer shall continue in full force and effect. To the extent any provision of this Counteroffer is inconsistent with the terms of the Offer, this Counteroffer shall be deemed to supersede and replace the inconsistent provisions of the Offer.

Buyer acknowledges and understands that the Property is an asset of the bankruptcy estate and, therefore, Seller has authority to execute the Offer and Counteroffer herein, and sell the Property only pursuant to Court approval.

4.      **MULTIPLE COUNTEROFFER**

Seller may be making a Counteroffer to another prospective buyer(s) on terms that may or may not be the same as in this Counteroffer. Acceptance of this Counteroffer by Buyer shall not be binding unless and until it is subsequently re-signed by Seller below.

This Counteroffer has been executed as of each date set forth below.

SELLER:

Dated: _____12/1/2023  |  6:45 AM PST_____, 2023

Leslie T. Gladstone, Trustee
Estate of L. Robert Jellinek,
Bankruptcy Case No. 22-12836-MM7

The undersigned Buyer hereby accepts the terms and conditions of this Counteroffer and agrees to be bound thereby.

BUYER:

Dated: ___12/02/2023___, 2023

*Mustafa Amanatullah*
Mustafa Amanatullah

Dated: ___12/02/2023___, 2023

*Gulden Amanatullah*
Gulden Amanatullah

MULTIPLE COUNTER OFFER SIGNATURE LINE:

SELLER:

Dated: _____12/3/2023  |  10:06 AM PST_____, 2023

Leslie T. Gladstone, Trustee
Estate of L. Robert Jellinek,
Bankruptcy Case No. 22-12836-MM7

Buyer's Initials (MA) (GA)          2          Seller's Initials (LTGG)



# BUYER CONTINGENCY REMOVAL No. _____1_____
## (C.A.R. Form CR-B, 6/23)

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R Form RRRR), ☐ Other _____
_____ dated ___11/21/2023___, ("Agreement"),
on property known as _____5814 Ranch View Rd, Oceanside, CA 92057_____ ("Property"),
between _____Mustafa Amanatullah, Gulden Amanatullah_____ ("Buyer")
and _____Robert L. Jellinek Qualified Personal Residence Trust_____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REMOVAL OF BUYER CONTINGENCIES:** With respect to any contingency and cancellation right that Buyer removes, unless Otherwise Agreed in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense, **if any,** for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. **Buyer removes ONLY the following individually checked Buyer contingencies:** (Paragraph numbers refer to C.A.R. Form RPA. Applicable paragraph numbers may be different for different forms.)
   **A.** ☐ Loan (**Paragraph 3L(1)** and **8A**)
   **B.** ☐ Appraisal (**Paragraph 3L(2)** and **8B**)
   **C.** Investigation of Property (**Paragraph 3L(3)**, **8C**, and **12**)
      (1) ☐ Entire Buyer's Investigation Contingency (**Paragraph 12**)
   OR (2) ☐ Only the part of the Investigation related to inspections concerning physical attributes of the Property (**Paragraph 12B(1)**)
   OR (3) ☐ All Buyer Investigations (including insurability) other than the physical attributes (**Paragraph 12B(2)**)
   OR (4) ☐ Entire Buyer's Investigation Contingency, EXCEPT:
         ☐ Fire Insurance
         ☐ Flood Insurance
         ☐ Other: _____
   **D.** Review of Seller Documents:
      (1) ☐ Review of All Seller Documents (**Paragraph 3L(4)**, **8D**, **9B(6)**, **10A**, and **11**)
   OR (2) ☐ Review of All Seller Documents, EXCEPT:
         ☐ Government Reports (**Paragraph 10A**);
         ☐ Statutory and other Disclosures (**Paragraph 11**);
         ☐ Other: _____
   **E.** ☐ Preliminary ("Title") Report (**Paragraph 3L(5)**, **8E**, and **13**)
   **F.** ☐ Common Interest (HOA or OA) Disclosures (**Paragraph 3L(6)**, **8F** and **11L**)
   **G.** ☐ Review of leased or liened items (**Paragraph 3L(7)**, **8G**, and **9B(6)**)
   **H.** Sale of Buyer's Property (**Paragraph 3L(8)** and **8J**)
      ☐ Entering into contract for Buyer's Property     ☐ Close of Escrow on Buyer's Property
   **I.** ☐ Other: _____

3. ☐ **ALL Buyer contingencies are removed, EXCEPT:**
   ☐ Loan Contingency (**Paragraph 3L(1)** and **8A**);
   ☐ Appraisal Contingency (**Paragraph 3L(2)** and **8B**);
   ☐ Contingency for the Close of Buyer's Property (**Paragraph 3L(8)** and **8J**);
   ☐ Condominium/Planned Development (HOA) Disclosures (**Paragraph 3L(6)**, **8F** and **11L**);
   ☐ Other: _____

4. ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

5. Once all contingencies are removed, whether or not Buyer has satisfied themselves regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

   **NOTE:** If this form is attached to a Request for Repairs (C.A.R. Form RR), Seller Response and Buyer Reply to Request for Repairs (C.A.R. Form RRRR), or another form or document such as an addendum (C.A.R. Form ADM) or Amendment to Existing Agreement (C.A.R. Form AEA) it is only valid if Buyer and Seller agree to the requests made on that form or document.

Buyer *Mustafa Amanatullah*          *Mustafa Amanatullah* **Date** 12/19/2023
Buyer *Gulden Amanatullah*          *Gulden Amanatullah* **Date** 12/19/2023

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CR-B 6/23 (PAGE 1 OF 1)**

*Antoinette Embry | Compass*

## BUYER CONTINGENCY REMOVAL (CR PAGE 1 OF 1)

# Exhibit B

# Exhibit B

# BACK-UP AGREEMENT

Seller:     Leslie T. Gladstone, Chapter 7 Trustee for the Estate of L. Robert Jellinek, Bankruptcy Case No. 22-12836-MM7, pending in the United States Bankruptcy Court for the Southern District of California

Buyer:     *Alexandra Vallier* | *Matthew Vallier* ("**Buyer**")

Property:     5814 Ranch View, Oceanside, CA 92057

This is an Back-Up Agreement and counteroffer to the terms of the standard California Residential Purchase Agreement and Joint Escrow Instructions, including Buyer Contingency Removal No. One (collectively, the "**Offer**"), which Offer is attached hereto as <u>Exhibit A</u> and incorporated herein, for the property located at 5814 Ranch View, Oceanside, CA 92057 (the "**Property**").

The seller of the Property is Leslie T. Gladstone, Chapter 7 Trustee ("**Seller**") for the Estate of L. Robert Jellinek (the "**Bankruptcy Estate**"), Bankruptcy Case No. 22-12836-MM7, United States Bankruptcy Court for the Southern District of California (the "**Court**").

**Buyer acknowledges that the sale referred to herein, and any written modification to the terms set forth herein, is contingent upon the entry of a final order of the United States Bankruptcy Court approving such sale under the terms and conditions stated herein or as hereafter modified by mutual written agreement of the parties hereto. If Seller fails to obtain the final order of the Court, the monies received from Buyer shall be refunded to Buyer.**

Buyer and Seller accept all the terms and conditions in the Offer with the following changes, deletions and amendments.

1.    **PURCHASE PRICE**  (Paragraph 3 of Offer)

Subparagraph 3A of the Offer is modified as follows: The total Purchase Price shall be _____
_____ *One million* _____ and 00/100ths Dollars
($ *1,000,000* .00).

**Buyer's Initials:** *AV /MV*    **Seller's Initials:** *H*

Subparagraphs 3E(1) and (2) are modified as follows: A portion of the Purchase Price may be funded by a loan obtained by Buyer; provided, however, that Buyer's obligations under this Back-Up Agreement are not contingent upon Buyer obtaining financing for the Purchase Price. See Paragraph 4 below.

2.    **CLOSE OF ESCROW**  (Paragraph 3 of Offer)

Subparagraph 3B of the Offer is modified as follows: Close of Escrow shall occur fifteen (15) days after entry of an Order by the Court approving the terms of this Back-Up Agreement, or as soon as is reasonably possible thereafter.

Buyer's Initials ( *AV* ) ( *MV* )    1    Seller's Initials ( *H* )

3.  **INITIAL DEPOSIT**  (Paragraph 3 of Offer)

Subparagraph 3D(1) of the Offer is modified to provide that the Initial Deposit Amount shall be $28,000.00, payable to the Estate of Jellinek, Leslie T. Gladstone, Trustee, and delivered to Seller by Noon Pacific Time on January 8, 2024. The amount set forth in subparagraph 3F of the Offer shall be adjusted accordingly.

4.  **WAIVER OF ALL CONTINGENCIES**  (Paragraph 3 of Offer)

Notwithstanding anything to the contrary in the Offer, this Back-Up Agreement expressly includes Buyer Contingency Removal No. One, in which Buyer hereby removes any and all Buyer Contingencies.

5.  **ITEMS INCLUDED AND EXCLUDED**  (Paragraph 3 of Offer)

Subparagraphs 3P(1) and 3P(2) of the Offer are modified to provide that items included in the sale are all appliances on the Property as of November 30, 2023.

6.  **ALLOCATION OF COSTS**  (Paragraphs 3 and 10 of Offer)

Paragraphs 3 and 10 of the Offer are modified as follows:

(a)     Subparagraph 10B(2)(B) is modified to provide that Seller shall provide to Buyer a copy of any applicable government-conducted or point-of-sale inspection report that is in her possession.

(b)     Subparagraph 3Q(7) is modified to provide that Buyer and Seller shall pay escrow fee 50/50 and Escrow Holder shall be Ticor Title Company (Carolyn Church).

(c)     Subparagraphs 3Q(12), 3Q(13), 3Q(14), 3Q(15), 3Q(16), and 3Q(17), if applicable, shall be paid by **Buyer**.

(d)     Buyer acknowledges and understands that the Property is an asset of the bankruptcy estate. As a result, Seller's obligation to pay any sums or costs or to take any action no matter how defined or designated, is contingent upon approval by the Court of the terms of this transaction, and the close of escrow for the sale of the Property. A hearing may be required by the Court.

7.  **OTHER TERMS**  (Paragraph 3 of Offer)

Subparagraph 3R of the Offer is modified as follows:

(a)     Seller accepts the Offer to purchase the Property and agrees to sell the Property subject to the conditions and provisions of this Back-Up Agreement.

(b)     Except as amended herein, the terms of the Offer shall continue in full force and effect. To the extent any provision of this Back-Up Agreement is inconsistent with the terms of the Offer, this Back-Up Agreement shall be deemed to supersede and replace the inconsistent provisions of the Offer.

Buyer's Initials ( AJ ) ( MN )          2          Seller's Initials ( M )

8. **ADDENDA AND ADVISORIES** (Paragraph 4 of Offer)

Seller is a bankruptcy trustee and thus some items in subparagraphs 4A and 4B may not apply, and thus will not be provided by Seller.

9. **DEPOSITS** (Paragraph 5 of Offer)

Paragraph 5 of the Offer, including subparagraphs 5A(1) and 5A(2), is modified to provide that the deposit shall be paid directly to Seller, not to Escrow Holder.

10. **CLOSING AND POSSESSION** (Paragraph 7 of Offer)

Paragraph 7 of the Offer is modified to provide that, except as expressly set forth in this Back-Up Agreement, Buyer acknowledges that Seller has made no statements, representations or warranties, written or oral, expressed or implied, with respect to the physical, legal, economic, or other condition of the Property or the suitability of the Property for Buyer's purposes, and by proceeding to Closing, Buyer hereby acknowledges and agrees that Buyer is familiar with the Property, and has conducted such investigation of the Property as Buyer has deemed necessary and appropriate.

Subparagraph 7B(1) is modified to provide that all Seller's personal property and debris from inside the house, garage, and covered patio will be removed prior to Close of Escrow.

Subparagraph 7D of the Offer is deleted in its entirety.

Subparagraph 7E of the Offer is deleted in its entirety and replaced with the following: Seller shall provide all keys in her possession or control on the date of closing.

11. **ITEMS INCLUDED IN AND EXCLUDED FROM SALE** (Paragraph 9 of the Offer)

Subparagraphs 9B(3), 9B(4), 9B(5), 9B(6), and 9B(7) of the Offer are deleted in their entirety.

Subparagraph 9C of the Offer is modified to provide that brackets attached to walls, floors or ceilings may remain with the Property. Notwithstanding any provision in the Offer to the contrary, Seller shall not be obligated to make any Repairs to the Property.

12. **STATUTORY AND OTHER DISCLOSURES AND CANCELLATION RIGHTS**
(Paragraphs 11 and 12 of Offer)

Paragraphs 11 and 12 of the Offer are modified as follows: As to subparagraphs 11A, 11B, 11C, 11D, 11K, 11L, 11M, 11N, and Paragraph 12 of the Offer, Buyer understands and agrees that certain disclosures otherwise required in the sale of real property are not required of Seller, as a fiduciary administering a bankruptcy estate. No disclosures from which Seller is exempt have or will be made in connection with the proposed sale of the Property. Seller shall provide to Buyer any such documentation that she has in her possession.

13. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY**
(Paragraph 12 of Offer)

While this Agreement is in effect, Buyer, its agent, contractors and subcontractors shall have the right to enter upon the Property at reasonable times during ordinary business hours and upon prior notice to Seller, to make any and all inspections and tests as Buyer reasonably deems desirable and which may be

Buyer's Initials (＿＿) (＿＿)          3          Seller's Initials (＿＿)

accomplished without causing any alteration or damage to the Property. Buyer agrees to indemnify, defend and hold Seller and the Property harmless from any and all costs, loss, liability, damages or expenses, of any kind or nature, arising out of or resulting from such entry. The foregoing indemnity and defense obligation of Buyer shall survive the termination of this Agreement. Buyer shall have no right to terminate this Agreement based on the results of such inspections and tests except as provided in the Offer.

(a) Except as expressly set forth in this Back-Up Agreement, Buyer acknowledges that Seller has made no statements, representations or warranties, written or oral, expressed or implied, with respect to the physical, legal economic or other condition or the Property or the suitability of the Property for Buyer's purposes.

(b) Buyer understands that the Property is being sold in an **"as is, where is"** condition. Buyer has knowledge that access to the interior is not a condition of this sale. It will be Buyer's responsibility to coordinate with the County Health Department and/or other agencies regarding the safety and entry into the Property.

(c) Buyer hereby acknowledges and agrees that Buyer is familiar with the Property, and has conducted such investigation of the Property as Buyer has deemed necessary and appropriate. Buyer acknowledges and agrees that Buyer shall, upon the close of escrow, acquire the Property in its **"as is"** condition, and shall assume all risk with respect to any defects in the condition of the Property, including any latent defects, hazardous or toxic waste, any violation, deficiency, or failure to comply with any safety, building or other code, regulation, statute or law, and any restrictions, obligations, benefits and burdens whatsoever regarding the use of the Property; and Buyer hereby waives all claims against Seller with respect thereto and shall indemnify, defend and hold Seller harmless from and against all claims, liabilities, losses, damages, costs, including reasonable attorneys' fees, with respect thereto, arising or asserted on or after the close of escrow. With respect to the foregoing, Buyer expressly waives any benefits of Cal. Civ. Code Section 1542, which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN TO HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

Buyer's Initials: _N/MN_    Seller's Initials: _M_

(d) Notwithstanding Paragraph 12 of the Offer and this Paragraph 13 of this Back-Up Agreement, Seller shall disclose solely adverse material facts, which are actually known to Seller. Buyer acknowledges that Seller has no personal nor independent knowledge of the Property, nor any duty to investigate with respect thereto for purposes of this transaction, and that Seller will not be in a position to disclose adverse material facts, even if they patently exist at the Property. Seller shall exercise her good faith efforts in providing Buyer with information material to the Property, which is in her possession, if any. Nothing herein, however, shall be construed as in any way limiting the **"as is"** nature of this transfer.

14. **TITLE AND VESTING**  (Paragraph 13 of Offer)

Subparagraph 13F of the Offer is modified to provide that title shall be transferred by **quitclaim deed**, together with a Court order confirming the sale free and clear of liens, claims and interests.

15. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS** (Paragraph 14 of Offer)

Subparagraph 14B is of the Offer is deleted in its entirety.  ALL Buyer's contingencies are waived.

Subparagraph 14B(4) of the Offer is deleted in its entirety.

Subparagraphs 14C(1) and 14C(2) of the Offer are modified to conform with Paragraph 19 of this Back-Up Agreement (Liquidated Damages).

16. **REPAIRS**  (Paragraph 15 of Offer)

Notwithstanding any provision in the Offer to the contrary, Seller shall not be obligated to make any Repairs to the Property.

17. **ATTORNEY'S FEES**  (Paragraph 22 of Offer)

Paragraph 22 of the Offer is modified as follows:  All disputes relating to this transaction shall be decided by the Bankruptcy Court and no other tribunal.  Any award of attorney's fees shall be decided by the Bankruptcy Court.

18. **LEGALLY AUTHORIZED SIGNER**  (Paragraph 28 of Offer)

Seller is the representative of the bankruptcy estate described above, and she was appointed by the United States Trustee for the Southern District of California.

19. **LIQUIDATED DAMAGES**  (Paragraph 29 of Offer)

Paragraph 29 of the Offer is deleted in its entirety and replaced with the following:

**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid.  Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement.**

Buyer's Initials: _____  Seller's Initials: _____

20. **MEDIATION; ARBITRATION OF DISPUTES**  (Paragraphs 30 and 31 of Offer)

Paragraphs 30 and 31 of the Offer are deleted in their entirety and replaced by the following:  Any and all disputes arising under the Offer and this Back-Up Agreement shall be decided, if necessary, by the Bankruptcy Court and no other tribunal.

Buyer's Initials ( ___ ) ( ___ )            5            Seller's Initials ( ___ )

21. **ACCEPTANCE OF OFFER** (Paragraph 33 of Offer)

 Except as amended hereby, the terms of the Offer shall continue in full force and effect. To the extent any provision of this Back-Up Agreement is inconsistent with the terms of the Offer, this Back-Up Agreement shall be deemed to supersede and replace the inconsistent provisions of the Offer.

 Buyer acknowledges and understands that the Property is an asset of the bankruptcy estate and, therefore, Seller has authority to execute the Offer and Back-Up Agreement herein, and sell the Property only pursuant to Court approval.

22. **BACK-UP AGREEMENT**

 This Back-Up Agreement is executed by Buyer and Seller in connection with the auction of the Property held by the Court on January 11, 2024 (the "**Auction**"), at which time the Court determined the highest and best bid (the "**Successful Bid**" from the "**Successful Bidder**") and the second-highest bid (the "**Back-Up Bid**" from the "**Back-Up Bidder**").

 This Back-Up Agreement is executed by Buyer as the Back-Up Bidder, not the Successful Bidder.

 If, following entry of the order authorizing the sale, the Successful Bidder fails to consummate the sale because of a breach or failure to perform on the part of the Successful Bidder, Buyer's Back-Up Bid will be deemed to be the new successful bid and Seller will be authorized, but not required, to consummate the sale with Buyer without further order of the Court.

 This Back-Up Agreement is irrevocable until the later of (i) two days after the order approving the Successful Bid becomes final or (ii) the Closing of the sale to the Successful Bidder. Once the Back-Up Bid by Buyer is no longer irrevocable, Seller will promptly refund Buyer's deposit and this Back-Up Agreement shall terminate.

*[Remainder of page intentionally left blank.]*

Buyer's Initials ( ) ( )    6    Seller's Initials ( )

This Back-Up Agreement has been executed as of each date set forth below.

Dated: January ___, 2024

**BUYER** (if Buyer is an entity):

Name of Entity: _____

Signature: _____
Name: _____
Title: _____

**BUYER** (if Buyer is one or more individuals):

Dated: January ⅃⅃ , 2024

Signature: _Alexandra Vallier_
Name: _Alexandra Vallier_

Dated: January ⅃⅃ , 2024

Signature: _____
Name: _Matthew Vallier_

**SELLER:**

Dated: January 11, 2024

_____
Leslie T. Gladstone, Trustee
Estate of L. Robert Jellinek,
Bankruptcy Case No. 22-12836-MM7

Buyer's Initials ( ⅃N ) ( ⅃N )          7          Seller's Initials ( ⅃⅃ )

**EXHIBIT A**

**SELLER'S FORM CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS
AND RELATED DOCUMENTS**

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883



# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 12/21)**

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☒Buyer ☐ Seller ☐ Landlord ☐ Tenant _Alixandra Vallier_     Date _01/11/2024_

☒Buyer ☐ Seller ☐ Landlord ☐ Tenant _Matthew Vallier_     Date _01/11/24_

Agent _____ DRE Lic. # _____
                           Real Estate Broker (Firm)

By _____ DRE Lic. # _____ Date _____
          (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**



## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

Coldwell Banker West, 410 Kalmia Street San Diego CA 92101     Phone: 6199948068     Fax: 619.325.0750     5814 Ranch View
Christine A. Golemb     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883

CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:

(a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. (b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. (f) "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. (g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Buyer's agent" means an agent who represents a buyer in a real property transaction.

2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: (c) The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

2079.18 (Repealed pursuant to AB-1289)

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**AD REVISED 12/21 (PAGE 2 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com      5814 Ranch View

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883

**CALIFORNIA ASSOCIATION OF REALTORS®**

# FAIR HOUSING AND DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, Revised 6/23)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. **FEDERAL FAIR HOUSING ACT ("FHA")** Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. **CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA")** California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. **CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh")** California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. **AMERICANS WITH DISABILITIES ACT ("ADA")** 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. **OTHER FAIR HOUSING LAWS:** § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in **monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race | Color | Ancestry | National Origin | Religion |
|------|-------|----------|-----------------|----------|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2023, California Association of REALTORS®, Inc.
**FHDA REVISED 6/23 (PAGE 1 OF 2)**



## FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)

| | |
|---|---|
| Coldwell Banker West, 410 Kalmia Street San Diego CA 92101 | Phone: 6199948068    Fax 619.325.0750    5814 Ranch View |
| Christine A. Golemb | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com |

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883

E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   (i) Failing to allow that person to keep the service animal or emotional support animal in rental property,
   (ii) Charging that person higher rent or increased security deposit, or
   (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal; and;

O. Retaliating for asserting rights under fair housing laws.

10. **EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

11. **FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: https://calcivilrights.ca.gov/housing/

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

12. **LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant _Alixandra Vallier_ Date 01/11/2024

Buyer/Tenant _Matthew Vallier_ Date 01/11/24

Seller/Housing Provider _Leslie T. Gladstone, Chapter 7 Trustee_ Date 1/11/24

Seller/Housing Provider _____ Date _____

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

FHDA REVISED 6/23 (PAGE 2 OF 2)

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      5814 Ranch View

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883



**CALIFORNIA ASSOCIATION OF REALTORS®**

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT

### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, Buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | |
|---|---|---|---|
| Seller | _Leslie T. Gladstone, Chapter 7 Trustee_ | Date | 1/11/24 |
| Seller | | Date | |
| Buyer | Alixandra Vallier | Date | 01/11/2024 |
| Buyer | Matthew Vallier | Date | 01/11/24 |
| Buyer's Brokerage Firm | Justin McCabe | DRE Lic # | |
| By | Justin McCabe | DRE Lic # | Date |
| Seller's Brokerage Firm | Coldwell Banker West | DRE Lic # **01481919** | |
| By | | DRE Lic # **01861531** | Date 12/19/2023 | 3:30 |
| Christine A. Golemb | | | |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**PRBS REVISED 12/21 (PAGE 1 OF 1)**

### POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

Coldwell Banker West, 410 Kalmia Street San Diego CA 92101    Phone: 6195948068    Fax: 619.325.0750    5814 Ranch View
Christine A. Golemb    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
(C.A.R. Form WFA, Revised 12/21)

Property Address: _5814 Ranch View Road, Oceanside, CA  92057_ _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant _Alixandra Vallier_____ Date 01/11/2024

Buyer/Tenant _Matthew Vallier_____ Date 1/11/24

Seller/Landlord _____ Leslie T. Gladstone, Chapter 7 Trustee Date 1/11/24

Seller/Landlord _____ Date _____

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/21 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| Coldwell Banker West, 410 Kalmia Street San Diego CA 92101 | Phone: 6199948068 | Fax: 619.325.0750 | 5814 Ranch View |
| Christine A. Galomb | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com | | |

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. FORM RPA, Revised 12/22)

Date Prepared: _Jan 11 · 2024_

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _Alixandra Vallier_ / _Matthew Vallier_ ("Buyer").
   B. **THE PROPERTY** to be acquired is _5814 Ranch View Road_, situated
      in _Oceanside_ (City), _San Diego_ (County), California, _92057_ (Zip Code),
      Assessor's Parcel No(s). _157-600-16-00_ ("Property").
      **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   C. **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
      **Seller's Brokerage Firm** _Coldwell Banker West_ License Number _01481919_
      Is the broker of (check one): ☒ the Seller; or ☐ both the Buyer and Seller (Dual Agent).
      Seller's Agent _Christine A. Golemb_ License Number _01861531_
      Is (check one): ☒ the Seller's Agent. (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
      **Buyer's Brokerage Firm** License Number _____
      Is the broker of (check one): ☐ the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
      Buyer's Agent _Justin McCabe_ License Number _____
      Is (check one): ☐ the Buyer's Agent. (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
   C. ☐ **More than one Brokerage represents** ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph | Paragraph Term or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B (cash) | Purchase Price | $ _____ | ☐ All Cash |
| **B** | | Close of Escrow (COE) | ☐ _____ Days after Acceptance OR on ☐ _____ (date) | |
| **C** | 32A | Expiration of Offer | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or ☐ ____ ☐ AM/ ☐ PM | |
| **D(1)** | 5A(1) | Initial Deposit Amount | $ $28,000 ( ____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or ____) business days after Acceptance by wire transfer OR ☐ _____ |
| **D(2)** | 5A(2) | ☐ Increased Deposit (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( ____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR ☐ _____ (date) OR ☐ _____ |
| **E(1)** | 5C(1) | Loan Amount(s): First / Interest Rate / Points | $ _____ ( ____ % of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed ____% • Buyer to pay up to ____ points to obtain the rate above | Conventional or, if checked, ☐ FHA (Forms FVAC/HID attached) ☐ VA (Form FVAC attached) ☐ Seller Financing ☐ Other: _____ |
| | | If FHA or VA checked, Deliver list of lender required repairs | 17 (or ____) Days after Acceptance | |
| **E(2)** | 5C(2) | Additional Financed Amount / Interest Rate / Points | $ _____ ( ____ % of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed ____% • Buyer to pay up to ____ points to obtain rate above | Conventional or, if checked, ☐ Seller Financing ☐ Other: _____ |
| **E(3)** | 7A | Occupancy Type | Primary, or if checked, ☐ Secondary ☐ Investment | |
| **F** | 5D | Balance of Down Payment | $ _____ | |
| | | **PURCHASE PRICE TOTAL** | $ _____ | |

© 2022, California Association of REALTORS®, Inc.

**RPA REVISED 12/22 (PAGE 1 OF 16)** Buyer's Initials _AV_ / _MV_ Seller's Initials _H_ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

Coldwell Banker West, 410 Kalmia Street San Diego CA 92101 Phone: 6199948068 Fax: 619.325.0750 5814 Ranch View
Christine A. Golemb Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Property Address: 5814 Ranch View Road, Oceanside, CA 92057     Date: _____

| | Paragraph | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | **Seller Credit**, if any, to Buyer | ☐ $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: |
| G(2) | | **ADDITIONAL FINANCE TERMS:** _____ | | |
| G(3) | 18 | ☐ **Seller agrees to pay the obligation of Buyer to compensate Buyer's Broker under a separate agreement** (C.A.R. Form SPBB attached). Seller's Broker's offer, if any, to compensate Buyer's Broker is unaffected unless Otherwise Agreed. | | |
| H(1) | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| **I.** | | **Intentionally Left Blank** | | |
| J | 16 | **Final Verification of Condition** | 5 (or _____) Days prior to COE | |
| K | 23 | **Assignment Request** | 17 (or 0 ) Days after Acceptance | |
| **L.** | **8** | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | **Loan(s)** | 17 (or 0 ) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or 0 ) Days after Acceptance | ☒ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | **Investigation of Property** | 17 (or 0 ) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | **Informational Access to Property** Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or 0 ) Days after Acceptance | Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR-B) and checking the applicable box therein.  Removal or Waiver at |
| L(4) | 8D, 14A | **Review of Seller Documents** | 17 (or 0 ) Days after Acceptance, or 5 Days after Delivery, whichever is later | time of offer is against Agent advice. See paragraph 8H. |
| L(5) | 8E, 13A | **Preliminary ("Title") Report** | 17 (or 0 ) Days after Acceptance, or 5 Days after Delivery, whichever is later | ☒ CR-B attached |
| L(6) | 8F, 11L | **Common Interest Disclosures** required by Civil Code § 4525 or this Agreement | 17 (or 0 ) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(7) | 8G, 9B(6) | **Review of leased or liened items** (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or n/a ) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(8) | 8J | **Sale of Buyer's Property** Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ **C.A.R. Form COP attached** | | |
| **M.** | | **Possession** | **Time for Performance** | **Additional Terms** |
| M(1) | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or ☐ ☐ AM/☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | **Seller Occupied or Vacant units** | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | **Occupied units by tenants or anyone other than the Seller** | ☐ **Tenant Occupied Property Addendum** (C.A.R. Form TOPA) attached | Seller shall disclose to Buyer if occupied by tenants or persons other than the Seller, and attach TOPA in a counter offer if not part of Buyer's offer. |
| **N.** | | **Document Fees/Compliance** | **Time for Performance** | |
| N(1) | 14A | **Seller Delivery of Documents** | 7 (or 0 ) Days after Acceptance | |
| N(2) | 19B | **Sign and return Escrow Holder Provisions and Instructions** | 5 (or _____) Days after Delivery | |
| N(3) | 11L(2) | **Time to pay fees for ordering HOA Documents** | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | **Install smoke alarm(s), CO detector(s), water heater bracing** | 7 (or _____) Days after Acceptance | |
| N(5) | 28 | **Evidence of representative authority** | XXXXXXXXXXXXXXXX Prior to Acceptance | |

**RPA REVISED 12/22 (PAGE 2 OF 16)**     Buyer's Initials _AV_ / _WL_     Seller's Initials _U_ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com     5814 Ranch View

Property Address: *5614 Ranch View Road, Oceanside, CA  92057*                                     Date: _____

| O | **Intentionally Left Blank** |
|---|---|

| P | **Items Included and Excluded** |
|---|---|

| P(1) | 9 | **Items Included - All items specified in Paragraph 9B are included and the following, if checked:** |
|---|---|---|

☐ Stove(s), oven(s), stove/oven combo(s);
☐ Refrigerator(s);
☐ Wine Refrigerator(s);
☐ Washer(s);
☐ Dryer(s);
☐ Dishwasher(s);
☐ Microwave(s);

☐ Video doorbell(s);
☐ Security camera equipment;
☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
☐ Smart home control devices;
☐ Wall mounted brackets for video or audio equipment;

☐ Above-ground pool(s) / ☐ spa(s);
☒ Bathroom mirrors, unless excluded below;
☐ Electric car charging systems and stations;
☐ Potted trees/shrubs;

**Additional Items Included:**
☐ _____ ; ☐ _____ ☐ _____

| P(2) | | **Excluded Items:** ☐ _____ ; ☐ _____ ☐ _____ |
|---|---|---|

| Q | **Allocation of Costs** | | | |
|---|---|---|---|---|
| | **Paragraph** | **Item Description** | **Who Pays (If Both is checked, cost is split equally unless otherwise Agreed)** | **Additional Terms** |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____ <br> ☒ Provided by: *Disclosure Source* | ☒ Environmental <br> ☐ Other _____ |
| Q(2) | 10A | _____ | ☐ Buyer ☐ Seller ☐ Both _____ <br> Provided by: _____ | |
| Q(3) | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☒ Buyer ☐ Seller ☐ Both _____ | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | ☒ Buyer ☐ Seller ☐ Both _____ | |
| Q(6) | 10B(2) | Government Required Point of Sale **corrective/remedial actions** | ☒ Buyer ☐ Seller ☐ Both _____ | |
| Q(7) | 19B | Escrow Fee | ☐ Buyer ☐ Seller ☐ Both _____ <br> Escrow Holder: *Ticor Title - Carolyn Church* | ☒ Each to pay their own fees |
| Q(8) | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____ <br> Title Co. (If different from Escrow Holder): *Ticor Title - Candy Church* | |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | ☒ Buyer ☐ Seller ☐ Both _____ | |
| Q(11) | | City transfer tax, fees | ☒ Buyer ☐ Seller ☐ Both _____ | |
| Q(12) | 11L(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | ☐ Buyer ☐ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee.  Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both | |
| Q(16) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(17) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(18) | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: <br> _____ | ☐ Buyer ☒ Seller ☐ Both _____ <br> Issued by: _____ <br> ☐ Buyer waives home warranty plan | If Seller or Both checked, Seller's cost not to exceed $ *825.00* |

| R | **OTHER TERMS:** _____ |
|---|---|

_____
_____


**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com        5614 Ranch View

Property Address: *5814 Ranch View Road, Oceanside, CA  92057*_____ Date: _____

4. **PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)
   A. **PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
   ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
   ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
   ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
   ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
   ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
   ☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)   ☐ Other _____

   B. **OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
   ☐ Addendum # _____ (C.A.R. Form ADM)   ☐ Short Sale Addendum (C.A.R. Form SSA)
   ☐ Back Up Offer Addendum (C.A.R. Form BUO)   ☐ Court Confirmation Addendum (C.A.R. Form CCA)
   ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
   ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)   ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
   ☐ Other _____   ☐ Other _____

   C. **BUYER AND SELLER ADVISORIES:** (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)
   ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)   ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
   ☒ Wire Fraud Advisory (C.A.R. Form WFA)   ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
      (Parties may also receive a privacy disclosure from their own Agent.)
   ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)   ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
   ☐ Trust Advisory (C.A.R. Form TA)   ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
   ☐ REO Advisory (C.A.R. Form REO)   ☐ Probate Advisory (C.A.R. Form PA)
   ☐ Other _____   ☐ Other _____

5. **ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **DEPOSIT:**
      (1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
      (2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.
      (3) **RETENTION OF DEPOSIT: Paragraph 29,** if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. **Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.**
   B. **ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.
   C. **LOAN(S):**
      (1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.
      (2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.
      (3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
      (4) **FHA/VA: If FHA or VA is checked in paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.
   D. **BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F)** (including **all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   E. **LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

6. **ADDITIONAL FINANCING TERMS:**
   A. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.
   B. **VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

**RPA REVISED 12/22 (PAGE 4 OF 16)**   Buyer's Initials ___/___   Seller's Initials ___/___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    5814 Ranch View

66

Property Address: 5814 Ranch View Road, Oceanside, CA 92057      Date: _____

  **C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7. CLOSING AND POSSESSION:**

  **A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

  **B. CONDITION OF PROPERTY ON CLOSING:**

    (1) Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

    **(2) Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

  **C. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney while the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

  **D. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

  **E.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

  **A. LOAN(S):**

    (1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed**, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.

    (2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.

    (3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

    (4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

    (5) NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

  **B. APPRAISAL:**

    (1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

    (2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

    (3) [X] Fair Appraisal Act: The Parties acknowledge receipt of the attached Fair Appraisal Act Addendum (C.A.R. Form FAAA).

  **C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12**.

  **D. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A**.

**RPA REVISED 12/22 (PAGE 5 OF 16)**     Buyer's Initials _____ / _____     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    5814 Ranch View

67

**E. TITLE:**
   (1) This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
   (2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11L** ("CI Disclosures").

**G. BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**H. REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency. If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**I. REMOVAL OF CONTINGENCY OR CANCELLATION:**
   (1) **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
   (2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
   (3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**J. SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

**9. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B. ITEMS INCLUDED IN SALE:**
   (1) All EXISTING fixtures and fittings that are attached to the Property;
   (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
   **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.
   (3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
   (4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
   (5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.
   (6) LEASED OR LIENED ITEMS AND SYSTEMS: Seller, within the time specified in **paragraph 3N(1)**, shall (i) disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

**RPA REVISED 12/22 (PAGE 6 OF 16)**   Buyer's Initials ___/___   Seller's Initials ___/___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com   5814 Ranch View

68

Property Address: 5814 Ranch View Road, Oceanside, CA 92057 _____ Date: _____

    (7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

  **C.** **ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

  **A.** **INSPECTIONS, REPORTS, TESTS AND CERTIFICATES: Paragraphs 3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, report, test, certificate or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document.** Agreements for payment of required work should be specified elsewhere in **paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).** Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**

  **B.** **GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

    (1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

    (2) **POINT OF SALE REQUIREMENTS:**

      (A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6).** Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

      (B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

    (3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

    (4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

  **C.** **HOME WARRANTY:**

    (1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.

    (2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

  **A.** **TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

    (1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordinance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

    (2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

    (3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

**RPA REVISED 12/22 (PAGE 7 OF 16)**    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    5814 Ranch View

69

    (4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B. LEAD DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
    (2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C,** and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(4) OR 5 Days** after Delivery of any disclosures specified in paragraphs **11 A, B, C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**
    (1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C,** or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
    (2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**L. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

RPA REVISED 12/22 (PAGE 8 OF 16)    Buyer's Initials  / _____    Seller's Initials  / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    5814 Ranch View

(2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**M. SOLAR POWER SYSTEMS:** For properties with solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller may use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**N. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:

(1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
   (A) A general home inspection.
   (B) An inspection for lead-based paint and other lead-based paint hazards.
   (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
   (D) Any other specific inspections of the physical condition of the land and improvements.

(2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations include, but are not limited to, an investigation of the availability and cost of general homeowner's insurance, flood insurance and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, (i) by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3) or 3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E. Buyer Indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

**A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

**D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**RPA REVISED 12/22 (PAGE 9 OF 16)**          Buyer's Initials _____ / _____     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          5814 Ranch View

71

Property Address: 5814 Ranch View Road, Oceanside, CA 92057 _____ Date: _____

**F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. **THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.**

**G.** Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B or CC).**

**A. SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 11N, 13A, 13C, and 28.**

**B. BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in **paragraph 11A** or **11B**, is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1)**.

**C. SELLER RIGHT TO CANCEL:**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8G**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2)** and **29**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**D. BUYER RIGHT TO CANCEL:**

(1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Buyer shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**RPA REVISED 12/22 (PAGE 10 OF 16)**     Buyer's Initials ___/___     Seller's Initials ___/___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 5814 Ranch View

72

Property Address: 5814 Ranch View Road, Oceanside, CA 92057                                         Date:

  **E. NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.
  **F. EFFECT OF REMOVAL OF CONTINGENCIES:**
      (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
      (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: (i) satisfied themselves regarding such contingency, (ii) elected to proceed with the transaction; and (iii) given up any right to cancel this Agreement based on such contingency.
  **G. DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: (i) be Signed by the applicable Buyer or Seller; and (ii) give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.
  **H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less (i) fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and (ii) any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.
**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.
**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to **paragraph 7B**; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).
**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.
**18. BROKERS AND AGENTS:**
  **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer. If Seller agrees to pay Buyer's Broker (see **paragraph 3G(3)**), Seller shall be entitled to a copy of the written portion of the compensation agreement between Buyer and Buyer's Broker identifying the compensation to be paid. See C.A.R. Form SPBB for further information.
  **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

RPA REVISED 12/22 (PAGE 11 OF 16)            Buyer's Initials ___/___            Seller's Initials ___/___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        5814 Ranch View

73

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883

Property Address: 5814 Ranch View Road, Oceanside, CA 92057 _____ Date: _____

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11L(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** or **paragraph 3 of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B.** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

**C.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

**D.** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**E.** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F.** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: (i) any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; (ii) California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and (iii) Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23. ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K,** Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA). Parties shall provide any assignment agreement to Escrow Holder within 1 Day after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment as specified in this paragraph.

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**RPA REVISED 12/22 (PAGE 12 OF 16)**        Buyer's Initials ____ / ____        Seller's Initials ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 76201  www.lwolf.com        5814 Ranch View

Property Address: 5814 Ranch View Road, Oceanside, CA 92057 _____ Date: _____

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A.** **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

**B.** **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

**C.** **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D.** **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E.** **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F.** **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G.** **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H.** **"Copy"** means copy by any means including photocopy, facsimile and electronic.

**I.** **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

**J.** **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**K.** **"Deliver", "Delivered"** or **"Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within 3 Days after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

**L.** **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**M.** **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**N.** **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32 or paragraph 33**.

**O.** **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

**P.** **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**Q.** **"Sign"** or **"Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

**26. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**27. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

RPA REVISED 12/22 (PAGE 13 OF 16)   Buyer's Initials ___ / ___   Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   5814 Ranch View

75

Property Address: 5814 Ranch View Road, Oceanside, CA 92057 _____ Date: _____

**28. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32 or 33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**29. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages):
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |

**30. MEDIATION:**

A. The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ADDITIONAL MEDIATION TERMS: (i)** Exclusions from this mediation agreement are specified in paragraph 31B; **(ii)** The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and **(iii)** Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.

**31. ARBITRATION OF DISPUTES:**

A. The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.

B. **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: **(i)** Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; **(ii)** an unlawful detainer action; and **(iii)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.

C. **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: **(i)** the filing of a court action to preserve a statute of limitations; **(ii)** the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or **(iii)** the filing of a mechanic's lien.

D. **AGENTS:** Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

E. **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |

RPA REVISED 12/22 (PAGE 14 OF 16)    Buyer's Initials ___ / ___    Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   5814 Ranch View

76

Property Address: _5814 Ranch View Road, Oceanside, CA  92057_ _____ Date: _____

**32. BUYER'S OFFER**

   **A.**  **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

   **B.**  ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

      (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

      (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

      (3) The name(s) of the Legally Authorized Signer(s) is/are: _____ .

      (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

      (5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #:

      _____

      _____

   **C.** The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

   **D.**  **BUYER SIGNATURE(S):**

   (Signature) By, _Alexandra Vallier_ (signature)          Date: _01/11/2024_

   Printed name of BUYER: _Alexandra Vallier_

   ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

   (Signature) By, _(signature)_          Date: _1/11/24_

   Printed name of BUYER: _Mathiau Vallier_

   ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

   ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

   **A.**  **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer. **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.

      ☐ Seller Counter Offer (C.A.R. Form SCO or SMCO)

      ☐ Back-Up Offer Addendum (C.A.R. Form BUO)

   **B.**  ☒ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

      (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

      (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

      (3) The name(s) of the Legally Authorized Signer(s) is/are: _Leslie T. Gladstone, Chapter 7 Trustee_ .

      (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

      (5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _L. Robert Jellinek, US Bankruptcy case # 22-01836-MM7_

      _____

   **C.** The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

   **D.**  **SELLER SIGNATURE(S):**

   (Signature) By, _(signature)_          Date: _1/11/24_

   Printed name of SELLER: _Leslie T. Gladstone, Chapter 7 Trustee_

   ☒ Printed Name of Legally Authorized Signer: _Leslie T. Gladstone, Chapter 7 Trustee_ Title, if applicable, _Trustee_

   (Signature) By, _____ Date: _____

   Printed name of SELLER: _____

   ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

   ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

| OFFER NOT ACCEPTED: _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date) |
| Seller's Initials |



RPA REVISED 12/22 (PAGE 15 OF 16)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    5814 Ranch View

77

Property Address: **5814 Ranch View Road, Oceanside, CA  92057** _____ Date: _____

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

A.  Buyer's Brokerage Firm _____ Lic. # _____
  By _____ Lic. # _____ Date _____
  By _____ Lic. # _____ Date _____
  Address _____ City _____ State _____ Zip _____
  Email _____ Phone # _____
  ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
  ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
  **Designated Electronic Delivery Address(es) (Check all that apply):**
    ☐ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

B.  Seller's Brokerage Firm **Coldwell Banker West** _____ Lic. # **01481919** ____ 12/19/2023 | 3:30 PM PS
  By _C.A.G.___ **Christine A. Golemb** Lic. # **01861531** ____ Date _____
  By —1B14C8EEAEAA470.— _____ Lic. # _____ Date _____
  Address **410 Kalmia Street** ___ City **San Diego** _____ State **CA** Zip **92101**
  Email **christie@christiegolemb.com** _____ Phone # _____
  ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
  ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
  **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent) (Check all that apply):**
    ☐ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____ / _____  Seller's Brokerage Firm presented this offer to Seller on _____ (date).
Agent or Seller Initials

Buyer's Initials <b>AV</b> / <b>MN</b>       Seller's Initials <b>M</b> / _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**RPA REVISED 12/22 (PAGE 16 OF 16)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    5814 Ranch View

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883



# BUYER'S INVESTIGATION ADVISORY
### (C.A.R. Form BIA, Revised 12/21)

CALIFORNIA
ASSOCIATION
OF REALTORS®

**Property Address** _5814 Ranch View Road, Oceanside, CA  92057_

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.
   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.
   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.
   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.
   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).
   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.
   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.
   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.
   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.
   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

**BIA REVISED 12/21 (PAGE 1 OF 2)**

## BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)

| Coldwell Banker West, 410 Kalmia Street San Diego CA 92101 | Phone: 6199948068 | Fax: 619.325.0750 | 5814 Ranch View |
| Christine A. Colemb | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com | | |

79

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883

L. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _____ Date 01/11/2024

Buyer _____ Date 1/11/24

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

BIA REVISED 12/21 (PAGE 2 OF 2)

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     5814 Ranch View

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883



# FAIR APPRAISAL ACT ADDENDUM
### (C.A.R. Form FAAA, 6/22)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Other
_____ ("Agreement"),
dated _01/11/2024_, on property known as **5814 Ranch View Road, Oceanside, CA 92057** ("Property"),
in which **Leslie T. Gladstone, Chapter 7 Trustee** is referred to as ("Seller")
and _Alixandra Vallier_  _Matthew Vallier_ is referred to as ("Buyer").

Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/ AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**By signing below, Buyer and Seller has each read, understands and acknowledges receipt of a copy of this Fair Appraisal Act Addendum.**

Buyer _____ Date _01/11/2024_

Buyer _____ Date _1/11/24_

Seller _____ Date _1/11/24_
**Leslie T. Gladstone, Chapter 7 Trustee**

Seller _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**FAAA 6/22 (PAGE 1 OF 1)**



**FAIR APPRAISAL ACT ADDENDUM (FAAA PAGE 1 OF 1)**

Coldwell Banker West, 410 Kalmia Street San Diego CA 92101    Phone: 6199948068    Fax: 619.325.0750    5814 Ranch View
Christine A. Golomb    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883



**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/22)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.

Buyer/Seller/Landlord/Tenant _____ Date __04/11/2024__

Buyer/Seller/Landlord/Tenant _____ Date __1/11/24__

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/22 (PAGE 1 OF 1)**

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)

Coldwell Banker West, 410 Kalmia Street San Diego CA 92101     Phone: 6199948068     Fax: 619.325.0750     5814 Ranch View
Christine A. Golemb                              Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201     www.lwolf.com

DocuSign Envelope ID: B0A11941-4980-4BF6-A081-8B316E5A5883


CALIFORNIA
ASSOCIATION
OF REALTORS®

## BUYER CONTINGENCY REMOVAL No. _One_
(C.A.R. Form CR-B, 6/23)

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR), ☐ Other _____

dated _01/11/2024_ , ("Agreement"),
on property known as **5814 Ranch View Road, Oceanside, CA 92057** ("Property"),
between _Alixandria Vallier_ / _Matthew Vallier_ ("Buyer")
and **Leslie T. Gladstone, Chapter 7 Trustee** ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REMOVAL OF BUYER CONTINGENCIES:** With respect to any contingency and cancellation right that Buyer removes, unless Otherwise Agreed in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. Buyer removes **ONLY** the following individually checked Buyer contingencies: (Paragraph numbers refer to C.A.R. Form RPA. Applicable paragraph numbers may be different for different forms.)
   - **A.** ☐ **Loan (Paragraph 3L(1) and 8A)**
   - **B.** ☐ Appraisal **(Paragraph 3L(2) and 8B)**
   - **C.** Investigation of Property **(Paragraph 3L(3), 8C, and 12)**
     - (1) ☐ Entire Buyer's Investigation Contingency **(Paragraph 12)**
     - OR (2) ☐ Only the part of the Investigation related to inspections concerning physical attributes of the Property **(Paragraph 12(1))**
     - OR (3) ☐ All Buyer Investigations (including insurability) other than the physical attributes **(Paragraph 12B(2))**
     - OR (4) ☐ Entire Buyer's Investigation Contingency, EXCEPT: _____
       - ☐ Fire Insurance
       - ☐ Flood Insurance
       - ☐ Other: _____
   - **D.** Review of Seller Documents:
     - (1) ☐ Review of All Seller Documents **(Paragraph 3L(4), 8D, 9B(6), 10A, and 11)**
     - OR (2) ☐ Review of All Seller Documents, EXCEPT:
       - ☐ Government Reports **(Paragraph 10A)**;
       - ☐ Statutory and other Disclosures **(Paragraph 11)**;
       - ☐ Other: _____
   - **E.** ☐ Preliminary ("Title") Report **(Paragraph 3L(5), 8E, and 13)**
   - **F.** ☐ Common Interest (HOA or OA) Disclosures **(Paragraph 3L(6), 8F and 11L)**
   - **G.** ☐ Review of leased or liened items **(Paragraph 3L(7), 8G, and 9B(6))**
   - **H.** Sale of Buyer's Property **(Paragraph 3L(8) and 8J)**
     - ☐ Entering into contract for Buyer's Property   ☐ Close of Escrow on Buyer's Property
   - **I.** ☐ Other: _____

3. ☐ **ALL Buyer contingencies are removed, EXCEPT:**
   - ☐ Loan Contingency **(Paragraph 3L(1) and 8A)**
   - ☐ Appraisal Contingency **(Paragraph 3L(2) and 8B)**
   - ☐ Contingency for the Close of Buyer's Property **(Paragraph 3L(8) and 8J)**
   - ☐ Condominium/Planned Development (HOA) Disclosures **(Paragraph 3L(6), 8F and 11L)**;
   - ☐ Other: _____

4. ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

5. Once all contingencies are removed, whether or not Buyer has satisfied themselves regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

NOTE: If this form is attached to a Request for Repairs (C.A.R. Form RR), Seller Response and Buyer Reply to Request for Repairs (C.A.R. Form RRRR), or another form or document such as an addendum (C.A.R. Form ADM) or Amendment to Existing Agreement (C.A.R. Form AEA) it is only valid if Buyer and Seller agree to the requests made on that form or document.

Buyer _Alixandria Vallier_ Date _01/11/2024_
Buyer _Matthew Vallier_ Date _1/11/24_

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CR-B 6/23 (PAGE 1 OF 1)

## BUYER CONTINGENCY REMOVAL (CR PAGE 1 OF 1)

Coldwell Banker West, 410 Kalmia Street San Diego CA 92101     Phone: 6199948868          Fax: 619.325.0750      5814 Ranch View
Christine A. Golemb                      Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com